**In re Grand Jury Subpoena Duces Tecum Served Upon Gerald L. SHARGEL, Esq.**

**John DOE, Intervenor-Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 1448, Docket 84–1156.**

United States Court of Appeals, Second Circuit.

Argued June 7, 1984.

Decided August 13, 1984.

Edward M. Shaw, New York City (Peter A. Chavkin, Stillman, Friedman & Shaw, P.C., New York City, of counsel), for intervenor-appellant.

Walter S. Mack, Jr., New York City (Paul Shechtman, Asst. U.S. Atty., Rudolph W. Giuliani, U.S. Atty. for the S.D.N.Y., New York City, of counsel), for appellee.

Before OAKES and WINTER, Circuit Judges and MISHLER, District Judge.*

WINTER, Circuit Judge:

John Doe, on behalf of himself and five other clients of Gerald L. Shargel, Esq., appeals from Judge Lasker's order denying a motion to quash a grand jury subpoena *duces tecum* requiring Mr. Shargel to produce records of all fee arrangements or property transfers from, to, or on behalf of ten named individuals, six of whom invoke the attorney-client privilege.

We affirm.

### BACKGROUND

On March 5, 1984, a federal grand jury sitting in the Southern District of New York issued the subpoena in question re-

---

* The Hon. Jacob Mishler, Senior United States District Judge for the Eastern District of New York, sitting by designation.

quiring, *inter alia*, that Mr. Shargel produce records of any monies or property transferred to him by or on behalf of ten named individuals, eight of whom have been indicted for violating the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (West Supp.1984). The government states that the information is sought as evidence of "unexplained wealth," tax law violations, and payments of legal fees by "benefactors." In moving to quash the grand jury subpoena, Mr. Shargel averred that (i) he has provided legal representation to eight of the ten individuals; (ii) he has provided legal representation to six of those eight in connection with one or more of the acts named in the recently filed RICO indictment and that those six consulted him for legal advice about those acts well before any formal proceedings had been instituted; and (iii) as to the remaining two individuals his representation concerned other matters in which they had already been publicly charged.[1] Mr. Shargel argued, *inter alia*, that the requested information fell within the attorney-client privilege because: (i) he is a prominent criminal law specialist, and the disclosure of the identity of an individual consulting him would in effect divulge the communication "I have a criminal problem"; and (ii) the fact that each client consulted him shortly after the alleged events underlying the RICO indictment would support an inference of concerted activity.

On April 26, 1984, Judge Lasker denied the motion to quash. John Doe, one of Mr. Shargel's clients, intervened to appeal from Judge Lasker's order. We granted a stay pursuant to Fed.R.App.P. 8(a) and expedited the appeal.

## DISCUSSION

The underlying theory of the attorney-client privilege is

> that encouraging clients to make the fullest disclosure to their attorneys enables the latter to act more effectively, justly, and expeditiously, and that these benefits outweigh the risks posed by barring full revelation in court.

J. Weinstein & M. Berger, *Evidence*, ¶ 503(02) (1982); *see Fisher v. United States*, 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976). Since the privilege prevents disclosure of relevant evidence and thus impedes the quest for truth, a distinguished commentator has said that it must "be strictly confined within the narrowest possible limits consistent with the logic of its principle." 8 J. Wigmore, *Evidence* § 2291, at 554 (McNaughton rev. ed. 1961).

We have consistently held that client identity and fee information are, absent special circumstances, not privileged. *Colton v. United States*, 306 F.2d 633, 637–38 (2d Cir.1962), *cert. denied*, 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963), *United States v. Pape*, 144 F.2d 778, 782 (2d Cir.), *cert. denied*, 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944). This result follows from defining the privilege to encompass only those confidential communications necessary to obtain informed legal advice. This definition, which focuses upon facilitating the role of the lawyer as a professional advisor and advocate, is to be distinguished from the so-called "incrimination rationale," which focuses upon whether the materials sought may be used as evidence against the client.[2] *Compare*

---

1. As to these two clients, Mr. Shargel concedes that the attorney-client privilege does not protect client identity and fee information.

2. *E.g., In re Grand Jury Proceedings (Twist)*, 689 F.2d 1351 (11th Cir.1982); *In re Grand Jury Proceedings (Pavlick)*, 680 F.2d 1026 (5th Cir. 1982) (en banc), *In re Special Grand Jury No. 81–1 (Harvey)*, 676 F.2d 1005 (4th Cir.1982), *vacated and withdrawn when grand jury target indicted and became fugitive*, 697 F.2d 112 (4th Cir.1982) (en banc), *Baird v. Koerner*, 279 F.2d

623 (9th Cir.1960). The Sixth Circuit has recently considered and rejected the incrimination rationale. *In re Grand Jury Investigation No. 83–2–35*, 723 F.2d 447 (6th Cir.1983), *cert. denied sub nom Durant v. U.S.*, — U.S. —, 104 S.Ct. 3524, 82 L.Ed.2d 831 (1984). Indeed, whether the Ninth Circuit still adheres to the incrimination rationale is highly doubtful after *In re Osterhoudt*, 722 F.2d 591, 593 (9th Cir. 1983) ("Information regarding the fee arrangement ordinarily is not part of the subject matter

*Matter of Witnesses Before the Special March 1980 Grand Jury,* 729 F.2d 489, 492–94 (7th Cir.1984) with *In re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026 (5th Cir.1982). *See also* J. Weinstein & M. Berger, *Evidence,* ¶ 503(a)(4)[02]. While the attorney-client privilege historically arose at the same time as the privilege against self-incrimination, it was early established that the privileges had distinct policies and that the "point of honor"—the attorney's reluctance to incriminate his client—was not a valid reason to invoke the attorney-client privilege. 9 W. Holdsworth, *A History of English Law,* at 201–02 (1926).

The goal of enabling attorneys to offer informed professional advice and advocacy cannot be accomplished if courts may compel disclosure of communications between the client and attorney necessary to the provision of such services. Absent the privilege, an attorney could not even appraise the risk to the client of such a communication until it occurs. The attorney must thus decide early in the course of consultation whether to warn the client against communications which, however necessary to the rendering of competent legal advice, might be disclosed to an adversary in litigation. Lawyers would routinely have to choose between forgoing information indispensable to the provision of informed and competent legal representation or hearing the information and exposing the client to risk of subsequent disclosure to an adversary. Inadequate legal counsel would fall upon the innocent as well as upon the guilty and would in the long run impair the ability of courts to administer justice fairly. The privilege thus spares attorneys the necessity of making such Hobson's choices and protects the system of justice generally by allowing the client to shield confidential communications made in the course of seeking legal advice.

Absent special circumstances, disclosure of the identity of the client and fee information stand on a footing different from communications intended by the client to explain a problem to a lawyer in order to obtain legal advice. To be sure, the fact of consultation and the payment of a fee may be preconditions to seeking legal advice, and we would be less than candid not to concede that the lack of a privilege against disclosure of the fact of an attorney-client relationship may discourage some persons from seeking legal advice at all. Nevertheless, a general rule requiring disclosure of the fact of consultation does not place attorneys in the professional dilemma of cautioning against disclosure and rendering perhaps ill-informed advice or learning all the details and perhaps increasing the perils to the client of disclosure.

Where no such dilemma is created for the lawyer, information is not protected by the privilege even though the client may strongly fear the effects of disclosure, including incrimination. Professionally competent and informed advice can be rendered by an attorney even though he or she must disclose that a fee was a gem suspected to have been recently stolen, currency with certain serial numbers, or a sum far in excess of the client's reported income. *Compare United States v. Jeffers,* 532 F.2d 1101, 1115 (7th Cir.1976) with *In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 671 (5th Cir.1975). In the instant case, the government seeks fee information as evidence of unexplained wealth which may have been derived from criminal activity, *United States v. Barnes,* 604 F.2d 121, 146 (2d Cir.1979), *cert. denied* 446 U.S. 907, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980) and as evidence of the violation of the tax laws.[3]

of the professional consultation and therefore is not privileged communication even though it may evidence wrongdoing by the client.")

**3.** The argument that inferences of confidential communications demonstrating a criminal conspiracy may be drawn from the fact that several persons became clients of Mr. Shargel within a certain time period is wholly ephemeral. Seeking legal advice is as much a first step in demonstrating innocence or the non-existence of a problem as it is an admission of guilt. Moreover, the fact that a lawyer has multiple clients in no way implies a connection between them.

It seems evident to us that a broad privilege against the disclosure of the identity of clients and of fee information might easily become an immunity for corrupt or criminal acts. *See* McCormick, *Evidence* § 90 at 187 (2d ed. 1972) ("One who reviews the cases in this area will be struck with the prevailing flavor of chicanery and sharp practice pervading most of the attempts to suppress the proof of professional employment.") Such a shield would create unnecessary but considerable temptations to use lawyers as conduits of information or of commodities necessary to criminal schemes or as launderers of money. The bar and the system of justice will suffer little if all involved are aware that assured safety from disclosure does not exist.

We adhere to our prior decisions, therefore, and define the limits of the privilege in terms of the goal of enabling lawyers to render informed legal advice and advocacy. We of course continue to recognize that "there may be circumstances under which the identification of a client may amount to the prejudicial disclosure of a confidential communication," *Colton*, 306 F.2d at 637. However, we find no such circumstances here.

■ The identification of individuals as clients of Mr. Shargel neither discloses nor implies a confidential communication.[4] Although Mr. Shargel's affidavit volunteers a connection between his consultation with these six clients and the subsequent RICO proceeding, this connection could not have been inferred from the disclosure of client identity and fee information.[5] We note, however, that an inference of confidential communications indicating concerted activity among several clients might be drawn from a group consultation with an attorney.[6] We were informed at oral argument that only individual consultations with Mr. Shargel occurred. In any event, if the documents in question suggest that a group meeting took place or otherwise contain information protected by the privilege, they may be submitted *in camera* to the district court for appropriate redaction.

We were also informed at oral argument that the government believes that the fees of some of Mr. Shargel's clients were paid either by other clients or by third persons. Mr. Shargel's affidavit states otherwise. We note only that under *Pape* the privilege does not protect the identity of a "benefactor" so far as legal fees are concerned. It is, of course, true that payment of another person's legal fees may imply facts about a prior or present relationship with that person. However, an attorney's ability to give informed legal advice is not impaired by a rule allowing disclosure of such payments. Explanation of a particular relationship can be made and be protected by the privilege. The payment of another's legal fee is an act independent of that explanation and should not be accorded more protection against disclosure under the attorney-client privilege than a payment directly to the person for purposes of his or her retaining a lawyer. Whatever legal result might flow from application of the incrimination rationale, the view of the privilege we

---

**4.** We reject out of hand the argument that a confidential communication about criminal activity may be inferred from consultation with a criminal law specialist. Such consultation carries with it no implication of past criminal conduct, much less of a particular communication describing it. Even if an inference may be drawn that the client is apprehensive about a criminal law problem, that alone says nothing about guilt or innocence, about past or future acts, or even about the reasonableness of the apprehension.

**5.** A grand jury subpeona may not make a detailed inquiry into a client's motive for seeking legal advice or into the nature of legal services

rendered beyond that necessary to separate legal from nonlegal services (such as business advice unprotected by the privilege). *Colton* at 638. The subpoena here requires only the disclosure of the general "basis or reason for the [financial] transaction."

**6.** The government represented to Judge Lasker that it would not contend before the grand jury or at trial that the clients' decision to retain Mr. Shargel supported an inference of conspiratorial conduct. Because we do not adopt the incrimination rationale of the privilege, we do not rest our decision, as did the district court, on that representation.

adopt thus denies protection to evidence indicating payment of one person's legal fees by another. Moreover, an attorney may not undertake multiple representation or be compensated by someone other than the client without fully explaining the ramifications to the parties. Model Code of Professional Responsibility DR 5–105, DR 5–107, codified as N.Y.Jud. DR 5–105, DR 5–107 (McKinney 1975). The fact of possible disclosure of the payment of fees can be reviewed at that time before undertaking representation. We thus adhere to the aspect of *Pape* relating to "benefactors" also.

We therefore affirm. In view of the pending expiration of the grand jury's term, the mandate shall issue seven (7) days from the date of this opinion.