**Michael J. VINGELLI, Petitioner–Appellant,**

v.

**UNITED STATES of America, (DRUG ENFORCEMENT AGENCY), Respondent–Appellee.**

**No. 981, Docket 92–6285.**

United States Court of Appeals, Second Circuit.

Argued Dec. 16, 1992.

Decided May 3, 1993.

Michael J. Vingelli, pro se.

Gary G. Shattuck, Asst. U.S. Atty., Rutland, VT (Charles A. Caruso, U.S. Atty., David V. Kirby, Chief, Crim. Div., D. of Vt., of counsel), for respondent-appellee.

Before FEINBERG, CARDAMONE, and PRATT, Circuit Judges.

CARDAMONE, Circuit Judge:

This appeal revisits a recurring question: Does the power of a grand jury to compel the production of every person's testimony override the attorney-client privilege to the extent that when the person summoned is a lawyer asked for his client's identity and for fee information, here benefactor payments, he must answer? In attempting to build a case against a target of the grand jury's investigation, the prosecution has turned to defense counsel for information it believes unprotected by the attorney-client privilege. Recognizing that client identity and fee information are not presently sheltered under the privilege, defense counsel urges that the information sought falls into one of the special exceptions to that rule. What those "special circumstances" are that would protect this information has not been precisely defined. What they are remains as enigmatic as the smile that Leonardo Da Vinci left us on the face of the Mona Lisa. In light of defense counsel's argument, our task is to examine the special circumstances rules to see if they apply in the present case.

Michael J. Vingelli, Esq. appeals from an order entered on November 12, 1992 in the United States District Court for the District of Vermont (Parker, C.J.) holding him in contempt of court for refusing to answer

certain questions he was asked before a Vermont grand jury. He was asked to disclose the identity of a client, and details of his transmission of funds on behalf of that client to another attorney. Attorney Vingelli sent the money to another Vermont lawyer to pay him for representing a person facing drug charges. Vingelli refused to answer the questions, asserting that disclosure of the information would breach the attorney-client privilege. Chief Judge Parker rejected this claim of privilege and held appellant in contempt pursuant to 28 U.S.C. § 1826 (1988). That portion of the contempt order requiring the attorney's incarceration was stayed pending this appeal.

## BACKGROUND

A *subpoena duces tecum* and *ad testificandum* was served on Vingelli, who is an Arizona lawyer, on September 4, 1992. It directed him to appear before a grand jury sitting in Rutland, Vermont and to produce financial documents and records disclosing the source of funds he transmitted to the Vermont law firm of Rubin, Rona, Kidney & Myer, Esqs. and/or attorney Richard Rubin, Esq. The subpoena also called for him to testify in Vermont.

For several months the grand jury had been investigating a marijuana distribution network. This effort stemmed from the arrests and convictions of a number of relatively low-level members of an organization believed to be connected with a larger organization. One of those convicted was Ronald Lovell—currently awaiting sentencing for conspiracy to possess with the intent to distribute marijuana—represented by attorney Richard Rubin of the Rubin, Rona firm in Barre, Vermont.

The grand jury wanted to know how Lovell paid for retained counsel. It therefore began an investigation as to the source of monies allegedly transmitted to pay legal fees by attorney Vingelli in Arizona to attorney Rubin in Vermont. Based on information the grand jury received—disclosed to us in a sealed affidavit prepared by Assistant United States Attorney (AUSA) Gary Shattuck—it issued its August 19, 1992 subpoena, ordering Vingelli to appear and commanding him

to bring certain documents. Specifically, the subpoena directed appellant to bring "[a]ll billings, receipts, invoices, drafts, checks, money orders, correspondence, and all other documentation relating to the source and transmission of monies to Richard Rubin, Esq. and/or the law firm of Rubin, Rona, Kidney & Myer, Barre, Vermont." According to appellant, the subpoena sought to determine the extent of any relationship between Ronald Lovell—and other targets of the grand jury investigation—and attorney Vingelli's client. On its face, the instrument obviously has a far more restricted scope and requests only information about the payment of attorney Rubin's fee.

Following several motions to quash the subpoena and requests to delay his appearance, Arizona counsel finally testified before the grand jury on November 12, 1992. Sealed testimony of the hearing reveals that he provided virtually no information to that investigative body. He issued a blanket refusal to produce any documents for the grand jury, and also refused to answer any questions asked concerning his communications with attorney Rubin, even though AUSA Shattuck specifically told him that he was not seeking any disclosure as to the reason a client may have spoken with him or any advice he may have provided that client. The questions presented centered only on the manner in which appellant obtained the funds he transmitted to the lawyer in Vermont, the form in which he had received them, how they were sent to attorney Rubin, and who provided him with the funds. As noted, appellant maintained that such information was protected by the attorney-client privilege that exists between him and his unnamed client.

Following appellant's appearance before the grand jury, the government filed a motion pursuant to 28 U.S.C. § 1826 to hold him in contempt of court as a recalcitrant witness. In a November 12, 1992 order Chief Judge Parker found the refusal to testify was "without just cause" and that the witness was therefore in contempt. On appeal attorney Vingelli insists that revealing his long-standing client's identity as well as the other information the grand jury seeks would reveal the

confidential purpose for which the client consulted him. The attorney-client privilege has attached, appellant contends, to the information sought.

## DISCUSSION

### A. *Client Identity*

■ The grand jury has undoubted power in its investigatory capacity to insist upon the production of every person's testimony. *See United States v. Dionisio,* 410 U.S. 1, 9–10, 93 S.Ct. 764, 769–70, 35 L.Ed.2d 67 (1973); *Branzburg v. Hayes,* 408 U.S. 665, 682, 92 S.Ct. 2646, 2657, 33 L.Ed.2d 626 (1972). Its power in this regard is limited only in that production may not be compelled in violation of a valid privilege established under the common law, statutes or the Constitution. *See United States v. Calandra,* 414 U.S. 338, 346, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). The most ancient of the common law privileges, Professor Wigmore tells us, 8 J. Wigmore, *On Evidence* § 2290 (McNaughton rev. ed.1961), is the attorney-client privilege, dating back nearly 500 years and arising as an exception to testimonial compulsion. *Id.*

Despite its ancient lineage in England and its broad construction in our jurisprudence to encourage a client to make full disclosure to his attorney so that the attorney may act justly and expeditiously on the client's behalf, *see Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981); *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), limitations on its scope have been imposed. Because the privilege, as a concomitant side effect, withholds facts necessary to the fair administration of criminal justice, it has been held that it should be applied only to achieve its purpose: to protect those disclosures that were made—and absent the privilege would not have been made—to obtain legal advice. *See Fisher,* 425 U.S. at 403, 96 S.Ct. at 1577.

■ We have determined that in the absence of special circumstances client identity and fee arrangements do not fall within the attorney-client privilege because they are not the kinds of disclosures that would not have been made absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice. *See In re Grand Jury Subpoena Served Upon Doe,* 781 F.2d 238, 247 (2d Cir.) (en banc), *cert. denied,* 475 U.S. 1108, 106 S.Ct. 1515, 89 L.Ed.2d 914 (1986); *accord In re Shargel,* 742 F.2d 61, 62 (2d Cir.1984); *Colton v. United States,* 306 F.2d 633, 637–38 (2d Cir.1962), *cert. denied,* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963); *United States v. Pape,* 144 F.2d 778, 782–83 (2d Cir.), *cert. denied,* 323 U.S. 752, 65 S.Ct. 86, 89 L.Ed. 602 (1944). Appellant believes "special circumstances" exist in the case at hand because revealing the sought-after client information necessarily would reveal the purpose for which the client consulted him.

Other circuits have ruled that client identity or fee information is protected by the privilege under certain circumstances. One of the earliest cases defining a special circumstances exception was *United States v. Hodge & Zweig,* 548 F.2d 1347, 1353 (9th Cir.1977), in which the Ninth Circuit stated an exception to the general rule of client identity disclosure when there is strong probability that such disclosure would implicate the client in the very activity for which legal advice was sought. Currently most circuits considering the issue have found special circumstances warranting a privilege when the disclosure of the information would be tantamount to revealing a confidential communication. *See, e.g., Tornay v. United States,* 840 F.2d 1424, 1428 (9th Cir.1988); *In re Grand Jury Subpoena (DeGuerin),* 926 F.2d 1423, 1431 (5th Cir.1991); *In re Grand Jury Subpoenas (Anderson),* 906 F.2d 1485, 1491 (10th Cir.1990); *see also* Seymour Glanzer and Paul R. Taskier, *Attorneys Before the Grand Jury: Assertion of the Attorney–Client Privilege To Protect a Client's Identity,* 75 J.Crim.L. & Criminology 1070 (1984) (discussing exceptions to general rule permitting disclosure of client identity).

The Ninth Circuit's formulation in *Hodge & Zweig* that a strong probability that disclosure would implicate the client in the very criminal activity for which legal advice was sought was later limited by the Ninth Circuit. *See In re Osterhoudt,* 722 F.2d 591, 593–94 (9th Cir.1983). *Osterhoudt*'s gloss on *Hodge & Zweig* limited the protection of a

client's identity to those circumstances where its disclosure would in substance be a disclosure of the confidential communication between the attorney and client. This view has become known as the confidential communication exception, which we recognized in *In re Shargel*, 742 F.2d at 62–63, and with which the other circuits cited above agree.

■ We had much earlier adopted another exception to the notion that client identity and fee arrangements must be revealed, called the substantial disclosure exception. *See Colton*, 306 F.2d at 637. That exception states that where the substance of a confidential communication has already been revealed, but not its source, identifying the client constitutes a prejudicial disclosure of a confidential communication. *Id.* In the case at bar special circumstances do not implicate either of the recognized exceptions so as to warrant departure from the general rule requiring disclosure. Disclosure of the client's identity and the fee information solicited by the grand jury here do not amount to divulging a confidential communication.

■ Disclosing the client's name would not necessarily reveal his or her purpose in consulting attorney Vingelli. The client may harbor concern that he or she will be tarnished by guilt by association. Fear of such a tinge does not suffice to show that revealing the client's identity would be tantamount to exposing the purposes for which the client sought legal advice. The rule governing the unprivileged nature of client identification implicitly accepts the fact that a client might retain or consult an attorney for numerous reasons. Thus, the fact that disclosure of Vingelli's client's identity might suggest the possibility of wrongdoing on his or her part does not affect analysis of whether disclosure would reveal a confidential communication.

Further, attorney Vingelli provides little support for his conclusory assertion that revealing his client's name would constitute a disclosure of a confidential communication. Appellant's contention that giving a name would also substantially reveal the purpose for the client consulting him is unconvincing. Appellant tells us that his client consulted him to seek advice concerning the ramifications of lending $5,000 to a criminal defendant and having contacts with that defendant. Revelation of the client's name—even in conjunction with the fee payment information—would not reveal the client's privileged communication. To the contrary, the disclosure of the client's name in this case would not compel a particular conclusion concerning that purpose. In *Shargel*, a criminal defense attorney was forced to disclose several clients' names even though counsel's affidavit volunteered that a connection existed between six of his clients—whose identities he sought to protect—and RICO proceedings. There we rejected the proposition that a confidential communication concerning criminal activity may be drawn from the fact that a person consults with a member of the criminal defense bar. *See* 742 F.2d at 64 & n. 4.

The unknown client may not have consulted appellant regarding any legal questions. He or she may have sought only to shield his or her identity from discovery while assisting a friend, relative, or associate with the payment of legal fees, or the client may have been enmeshed in a complex of legal problems, one aspect of which concerned the Vermont client. The fact is that identifying the admittedly long-term client does not clarify the reason the client sought counsel. As evidenced by our present inability to divine the client's motive for seeking counsel, the purpose of the client's communication with the attorney would not become apparent merely upon disclosure of his or her identity.

B. *Fee Payment Information*

■ With regard to the fee payment information, the facts of this case differ from those cases where an attorney is asked to disclose how he has been paid fees on a client's behalf, for example, where a third-party benefactor has paid the attorney. *Cf. Doe*, 781 F.2d at 242 (grand jury sought identity of benefactor paying clients' fees). Under our precedent, for instance, it is beyond question that absent special circumstances the Vermont attorney, Richard Rubin, Esq., would not be able to assert the attorney-client privilege to prevent disclosing how defendant Lovell's fee was paid. *See id.* at 247–48. In contrast, appellant was not

asked how his fees were to be paid; rather, the grand jury asked him how he—as an intermediary for a benefactor—paid the fees of another attorney. That the funds for paying the other attorney's fees happened to come from a client is simply a happenstance, which is what in this case made the attorney-client privilege an issue.

Although here it is the fee-payor—not the fee-payee—who challenges the request to divulge what allegedly is confidential attorney-client information, we think the rationale underlying exclusions from the attorney-client privilege applies equally to this case. In particular, the disclosure of how appellant came to pay another attorney's fee on behalf of the other attorney's client does not reveal any information about attorney Vingelli's client's confidential communications concerning legal representation. Revealing the fee payment information does not thwart or prejudice the attorney-client relationship, which remains at the heart of the privilege. *See, e.g., Shargel*, 742 F.2d at 62–64. As *Doe* recognized, "[w]hile consultation with an attorney, and payment of a fee, may be necessary to obtain legal advice, their disclosure does not inhibit the ordinary communication necessary for an attorney to act effectively, justly, and expeditiously." *Doe*, 781 F.2d at 247–48. The same is true of disclosure of the fee payment information sought by the grand jury from appellant attorney.

■ Moreover, the attorney-client privilege only protects confidential communications made for the purpose of obtaining legal advice. *See In re Grand Jury Investigation (Schroeder)*, 842 F.2d 1223, 1224 (11th Cir. 1987). The information appellant is called upon to provide was narrowly defined, referring only to the source and transmission of the legal fees paid to attorney Rubin. Not only should such disclosure not inhibit open, full and frank discussion between appellant and his client concerning legal representation, but monetary transfers to attorney Rubin via Vingelli were obviously not made in order for the unknown client to obtain legal advice from attorney Vingelli. Instead the transfer was for another purpose, perhaps to assist a friend in Vermont. Hence, this information falls outside the ambit of the attorney-client privilege. *Cf.* 8 J. Wigmore, *On Evidence* § 2303 (Supp.1991) ("The mere fact that the services are rendered by an attorney does not necessarily establish that he was acting in such capacity so as to render the communications as privileged.").

The source of the funds would not be protected without appellant's intervention. His intercession should not alter the established rule, that is, attorney Vingelli's client cannot mask his or her identity from the knowledge of the grand jury by hiding behind the attorney's cloak. If the client thought he or she could successfully hide, he or she was poorly advised. It is not fitting for lawyers to serve as conduits of information or money essential to the success of a criminal scheme. The proper administration of criminal justice will be advanced by the bar becoming aware that its members may not provide clients with a safe haven from disclosure for such service. *See Shargel*, 742 F.2d at 64. Again, none of the recognized special circumstances here exist that would alter the unprivileged nature of the client's identity and fee transfer information that the grand jury asks for in this matter.

Finally, appellant's alternative request that he be permitted to give his testimony by telephone or by written answers to questions was previously rejected by the district court, as an exercise of its undoubted discretion. And, while we will not disturb that ruling, the request may certainly be brought before the district court again, if appellant is so advised.

## CONCLUSION

Accordingly, for the reasons stated, the judgment of the district court is affirmed.