**GERALD B. LEFCOURT, P.C.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 871, Docket 96–6151.

United States Court of Appeals,
Second Circuit.

Argued Jan. 27, 1997.

Decided Sept. 10, 1997.

Lawrence S. Goldman, New York City (Elizabeth M. Johnson, Goldman & Hafetz, New York City; Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, MA; Lawrence S. Horn, Robert J. Alter, Stills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., Newark, NJ; Gerald B. Lefcourt, Sheryl E. Reich, Lefcourt & Dratel, P.C., New York City, of Counsel), for Plaintiff–Appellant.

Neil M. Corwin, Asst. U.S. Attorney (Mary Jo White, United States Attorney for the Southern District of New York, of Counsel; Kay K. Gardiner, New York City, on the brief), for Defendant–Appellee.

(Robert J. Jossen, Shereff, Friedman, Hoffman & Goodman, LLP, New York City; John H. Doyle III, Anderson Kill & Olick, P.C., New York City; Nathan Z. Dershowitz, Dershowitz & Eiger, New York City; Jeremy Gutman, New York City; Martin Adelman, New York City), for Amici Curiae National Association of Criminal Defense Lawyers, New York Counsel of Defense Lawyers, New York Criminal Bar Association and New York State Association of Criminal Defense Lawyers.

Before: WALKER, PARKER, and HEANEY\*, Circuit Judges.

WALKER, Circuit Judge:

Plaintiff-appellant Gerald B. Lefcourt, P.C. ("Lefcourt" or "the law firm") appeals from the May 16, 1996 judgment entered in the United States District Court for the Southern District of New York (Robert P. Patterson, Jr., *District Judge* ), granting the United States' motion for summary judgment and denying plaintiff's cross-motion for summary judgment in plaintiff's tax refund action. In so doing, the district court affirmed the imposition of a $25,000 penalty by the Internal Revenue Service ("IRS") on the ground that Lefcourt had intentionally failed to comply with certain reporting requirements set forth in 26 U.S.C. § 6050I and that the law firm had not established "reasonable cause" for doing so.

Lefcourt has advanced a number of reasons for failing to file the information required by § 6050I, all of which are animated by a concern for the sensitive relationship that exists between attorney and client. We recognize the importance of this privilege and the impulse of attorneys to defend it vigorously, as Lefcourt has done here. However, for the following reasons, we affirm the judgment of the district court.

## BACKGROUND

Title 26, section 6050I, of the United States Code requires "[a]ny person . . . engaged in a trade or business" who "in the course of such trade or business, receives more than $10,000 in cash . . ." to report to the IRS the person from whom the cash was received, the amount of cash received, the date and nature of the transaction, and "such other information as the Secretary may prescribe." 26 U.S.C. § 6050I(a), (b). Form 8300 is the form used to report such a transaction.

During the summer of 1993, Lefcourt, a law firm specializing in criminal defense work, undertook the representation of a client facing federal drug and money laundering charges. The client paid Lefcourt over $10,000 in cash for legal services. On July 9, 1993, the law firm submitted a Form 8300 to the IRS, stating that it had received in excess of $10,000, and particularizing the date of the payment. The firm, however, deliberately omitted the payor's name. In doing so, Gerald Lefcourt, the law firm's name partner, attached to the Form 8300 an affidavit asserting that revealing the client-identifying information called for by § 6050I would prejudice the interests of a client whom the law firm was actively representing and that the confidentiality of the information was protected by the Fifth and Sixth Amendments of the Constitution and by the Lawyers' Code of Professional Responsibility.

On December 14, 1993, the IRS served the law firm with a Notice of Proposed Penalties under 26 U.S.C. § 6721(e), which allows for the imposition of a penalty where "intentional disregard" of § 6050I's reporting requirements is established. Over the following four months, Lefcourt initiated numerous correspondences with the IRS to request a conference with the IRS's Office of Appeals concerning the proposed penalty, and to explain the basis for its failure to provide the name of its client on the Form 8300. The overtures resulted in an apparently unsuccessful pre-settlement conference between Lefcourt and the IRS on April 12, 1994: on August 8, 1994 the IRS assessed the law firm a $25,000 penalty pursuant to § 6721.

In September of 1994, the law firm paid the full amount of the assessed penalty and, on that date, claimed a refund for the same amount. The following day, the IRS notified Lefcourt that no refund would be granted. On December 6, 1994, Lefcourt brought this refund action in the district court pursuant to 28 U.S.C. § 1346(a)(1).

In May 1995, while the case was pending before the district court, the law firm filed an amended Form 8300 that provided the name of the client that had previously been omitted from the form that was filed on July 9, 1993.

---

\* The Honorable Gerald W. Heaney of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Both parties moved for summary judgment before the district court. In an opinion and order dated May 13, 1996, the district court granted the government's motion and denied Lefcourt's, reasoning principally that Lefcourt intentionally disregarded § 6050I's filing requirements, thereby triggering the penalty for willful noncompliance set forth in 26 U.S.C. § 6721, and that the law firm failed to establish that it acted with the reasonable cause required to qualify for the mandatory waiver of penalties set forth in 26 U.S.C. § 6724. This appeal followed.

## DISCUSSION

We review *de novo* a district court's decision to grant summary judgment, using the same standard applied by the district court. *See Catlin v. Sobol,* 93 F.3d 1112, 1116 (2d Cir.1996). Summary judgment may not be granted unless the court determines that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In determining whether summary judgment was appropriate, "we resolve all ambiguities and draw all reasonable inferences against the moving party." *Skubel v. Fuoroli,* 113 F.3d 330, 334 (2d Cir.1997).

### I. *Intentional Disregard*

■ We first turn to the question of whether, by declining to provide its client's name as called for by Form 8300, the law firm acted with "intentional disregard" of § 6050I's filing requirements.

As noted earlier, 26 U.S.C. § 6050I requires "[a]ny person ... engaged in a trade or business" who "in the course of such trade or business, receives more than $10,000 in cash ..." to file a report with the IRS that specifies the person from whom the cash was received, the amount of cash received, the date and nature of the transaction, and "such other information as the Secretary may prescribe." 26 U.S.C. § 6050I(a), (b). When a party is deemed to have failed to file the information required by § 6050I because of "intentional disregard of the filing require-

ment," the Internal Revenue Code provides that the party shall be fined the greater of $25,000 or the amount of cash received in the transaction. *See* 26 U.S.C. § 6721(e)(2)(C). Title 26, section 301.6721–1(f)(2)(ii), of the Code of Federal Regulations indicates that "a failure is due to intentional disregard if it is a knowing or willful ... [f]ailure to include correct information."

The district court found that the $25,000 penalty was properly assessed against Lefcourt because the government satisfied its burden of demonstrating that the law firm acted with intentional disregard of its legal obligations—that is, that "[p]laintiff knew what § 6050I required and voluntarily, consciously, and intentionally failed to comply." *Gerald B. Lefcourt, P.C. v. United States,* 94 Civ. 8813, 1996 WL 252363, at *6 (S.D.N.Y. May 14, 1996).

On appeal, Lefcourt argues that the district court applied the incorrect *mens rea* standard to § 6721's enhanced penalty provision. Lefcourt takes the position that under § 6721, a good faith belief in the legality of one's conduct—even where that belief later proves to be mistaken or unreasonable—precludes a finding of intentional disregard. Put another way, Lefcourt argues that one must be aware of the law's requirements in order to disregard them, and thus, a subjective good faith belief that one's conduct is lawful precludes the imposition of the penalty. Lefcourt suggests that Congress chose to adopt this heightened "bad faith" requirement because the penalties provided for by the statute are severe.

The principal case Lefcourt points to is *Cheek v. United States,* 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), which involved the criminal prosecution of a defendant who failed to pay federal income taxes for several years on the basis of his (erroneous) view that, under the tax laws, wages did not constitute taxable income. The Supreme Court held that in order to convict a defendant of criminal tax evasion in violation of 26 U.S.C. § 7201, it is not sufficient for the government to show only that the defendant acted voluntarily, as opposed to by accident or mistake. The Court held that the govern-

ment also must prove willfulness, which, "as construed by ... prior tax cases, requires the Government to prove that the law imposed a duty on the defendant, that .the defendant knew of this duty, and that he voluntarily and intentionally violated this duty." *Id.* at 201, 111 S.Ct.· at 610. A defendant's genuinely held—albeit erroneous or even unreasonable—belief in the legality of his conduct is thus a defense to a prosecution for willful tax evasion. *Id.* at 203, 111 S.Ct. at 611.

Lefcourt's reliance on *Cheek* 's willfulness standard is unavailing. *Cheek* was a criminal case, and we are persuaded that its rationale does not apply in the context of the civil tax penalties at issue here. Describing the genesis of the "special treatment·of criminal tax offenses," *id.* at 200, 111 S.Ct. at 609, the Court in *Cheek* explained that Congress did not intend that a taxpayer "should become a criminal" based on a "bona fide misunderstanding as to his liability," *id.* (quoting *United States v. Murdock,* 290 U.S. 389, 396, 54 S.Ct. 223, 226, 78 L.Ed. 381 (1933)). Accordingly, "Congress has ... softened the impact of the common-law presumption [that every person knows the law] by making specific intent to violate the law an element of certain criminal tax offenses." *Id.* The concern that an individual taxpayer unfamiliar with the nuances of the tax code might confront a felony conviction upon a nonpayment of taxes is not present in this context, where the filer faces only a civil penalty. *Cf. Kalb v. United States,* 505 F.2d 506, 510 (2d Cir. 1974) (constitutional protections afforded criminal defendants unnecessary where "willful" violation of 26 U.S.C.· § 6672 is asserted because penalty is civil, rather than criminal).

Cases construing analogous civil penalty provisions in the tax code and, in particular, provisions requiring a showing of willfulness also persuade us that no heightened *mens rea* is required in this context. Courts considering such provisions define willfulness in terms of "voluntary, conscious, and intentional" conduct. *See, e.g., Kalb,* 505 F.2d at 511 (internal quotations omitted); *Denbo v. United States,* 988 F.2d 1029, 1033 & n. 3 (10th Cir.1993) (citing cases). Indeed, as this circuit has explained before *Cheek* in the slight-

ly different context of 26 U.S.C. § 6672 (which.provides for penalties upon willful failure to collect withholding tax), an "individual's bad purpose or evil motive in failing to collect and pay the taxes 'properly play[s] no part in·the civil definition of willfulness.'" *Hochstein v. United States,* 900 F.2d 543, 548 (2d Cir.1990) (quoting *Monday v. United States,* 421 F.2d 1210, 1216 (7th Cir.1970)); *see also Domanus v. United States,* 961 F.2d 1323, 1325–26 (7th Cir.1992).

█ Section 6721 does not use the term "willful"; it uses the term "intentional disregard." But 26 C.F.R. § 301.6721–1(f)(2)(ii) defines "intentional disregard" as synonymous with "willfulness." Thus, in our view, the "intentional disregard" set forth in § 6721's penalty provision means conduct that is willful, a term which in this context requires only that a party act voluntarily in withholding requested information, rather than accidentally or unconsciously. Once it is determined, as it was here, that the failure to disclose client-identifying information was done purposefully, rather than inadvertently, it is irrelevant that the filer may have believed he was legally justified in withholding such information. The only question that remains is whether the law required its disclosure.

As it is uncontested that Lefcourt was aware that Form 8300 asked for its client's identity and nonetheless chose to refuse to provide the name, there is no dispute that Lefcourt acted voluntarily. We thus agree with the district·court that, as a matter of law, Lefcourt's failure to disclose the client-identifying information was willful and in "intentional disregard" of the law firm's obligation. *Cf. Skouras v. United States,* 26 F.3d 13, 14 (2d Cir.1994) (willfulness may be decided at summary judgment stage).

II. *Mandatory Waiver*

█ Lefcourt argues that even if the law firm acted with intentional disregard of § 6050I's reporting requirements, it was entitled to the automatic penalty waiver under 26 U.S.C. § 6724. That section sets forth the waiver rules that apply to the penalties for failure to comply with certain IRS reporting requirements. It provides that "[n]o

penalty shall be imposed under this part with respect to any failure if it is shown that such failure is due to reasonable cause and not to willful neglect." 26 U.S.C. § 6724(a). The burden of showing reasonable cause is on the party seeking the waiver. *See McMahan v. Commissioner*, 114 F.3d 366, 368 (2d Cir. 1997). We hold that Lefcourt was not entitled to the waiver because the law firm failed to establish that it had an objectively reasonable argument for failing to disclose its client's identity.

■ Although we have found no cases discussing the phrase "due to reasonable cause and not to willful neglect" within the meaning of § 6724, the Supreme Court in *United States v. Boyle*, 469 U.S. 241, 243, 105 S.Ct. 687, 689, 83 L.Ed.2d 622 (1985), considered the meaning of a virtually identical phrase used in 26 U.S.C. § 6651(a)(1), which states the penalty for the late filing of a tax return. In that context, the Court stated that " 'willful neglect' may be read as meaning a conscious, intentional failure or reckless indifference." *Boyle*, 469 U.S. at 245, 105 S.Ct. at 690. However, we do not believe that *Boyle*'s definition applies to § 6724's waiver provision. In *Boyle*, the Supreme Court explicitly limited its definition to the term "willful neglect" as used in § 6651. *See Boyle*, 469 U.S. at 245, 105 S.Ct. at 690. More to the point, if *Boyle*'s definition were applied in this context, the circumstances that would trigger a penalty would be such as to negate the waiver provision in the first place because once a willful violation under § 6721 were found, a filer would never be entitled to a waiver under § 6724. Put another way, a filer found to have acted in a "voluntary, conscious, and intentional" manner so as to be subject to the penalty would also necessarily be found to have acted with "willful neglect" as defined in *Boyle*—that is, consciously and intentionally, *see id.*—and would thus be ineligible for the waiver. We do not believe that Congress would create such a phantom waiver clause. Rather, we believe that "reasonable cause and not willful neglect" must refer not simply to whether the

taxpayer acted voluntarily in the sense of acting consciously, but also to whether the filer's reason for so acting was objectively reasonable under the circumstances.

This interpretation of the meaning of the phrase "reasonable cause and not willful neglect" is supported by the definition of the term "reasonable cause" in 26 C.F.R. § 301.6724–1. To be entitled to the reasonable cause waiver, the filer must satisfy several criteria. Relevant here is the objective standard found in the regulation's requirement that the filer must have acted in a responsible manner by exercising reasonable care, "which is that standard of care that a reasonably prudent person would use under the circumstances in the course of its business in determining its filing obligations...." 26 C.F.R. § 303.6724–1(d)(i).[1]

■ Further, we believe that the regulation's reference to reasonableness "under the circumstances in the course of its business" permits a court to consider specific relevant features of the filer's particular business in assessing whether the filer acted with reasonable care in intentionally disregarding his or her § 6050I obligations. Thus the appropriate inquiry in this case is whether the law firm's decision to withhold client-identifying information was consistent with the standard of care that a reasonably prudent attorney would use under the circumstances in the course of his or her business.

Preliminarily, we acknowledge that a reasonable attorney carefully attends to the attorney-client privilege. Not only is the attorney bound to do so under the various codes of professional responsibility that govern the practice of law, *see e.g.* Deborah L. Rhode, *Professional Responsibility* 242–43 (1994); *Model Code of Professional Responsibility* DR 4–101 (1980), but also, to many attorneys, the privilege between attorney and client "is essential to enhancing frank and complete communication between attorney and client, which, in turn, promotes compliance with the

---

1. The filer must also have undertaken significant steps to avoid or mitigate the failure, *see* 26 C.F.R. § 303.6724–1(d)(ii), and must establish that there are "significant mitigating factors with respect to the failure." 26 C.F.R. § 303.6724–1(a)(2)(i). Given our disposition of this case, we need not decide whether the firm satisfied these additional criterion.

law and facilitates the administration of justice." Brief of the Amici Curiae at 4.

Yet the attorney-client privilege, however important to our system of justice, is not a license for an attorney to act "unreasonably" in willfully failing to comply with clear federal law. Thus, in the context presented here, if a reasonable attorney would have no basis for concluding that nondisclosure of client-identifying information was justified under existing law, the attorney-client privilege cannot serve to excuse the imposition of a penalty under § 6721. Accordingly, we turn to Lefcourt's rationale for nondisclosure to determine whether it was objectively reasonable.

Lefcourt argued to the IRS and to the district court that under Second Circuit law the attorney-client privilege protects an attorney from disclosing the client-identifying information required under § 6050I in certain "special circumstances." The law firm contended that it did not submit the required information principally because it believed that a special circumstance might be found to exist where the completed Form 8300 would provide the government with evidence of its client's unexplained wealth—evidence that could incriminate the client in the same proceedings for which the client had retained the law firm. Lefcourt also referred to the fact that disclosure of the client's identity might lead eventually to Lefcourt's being called as a witness against the client, which would in turn result in the law firm's disqualification.[2]  *See* Letter from Lawrence S. Goldman and Martin G. Weinberg, Goldman & Hafetz, to Eugene D. Alexander, District Director, Internal Revenue Service 16–17 (Jan. 7, 1994), *reprinted in* Joint Appendix on Appeal at 46–47; Affidavit of Gerald B.

Lefcourt in Support of Plaintiff's Motion for Summary Judgment ¶ 9, *reprinted in* Joint Appendix on Appeal at 262.

Our assessment of the reasonableness of the law firm's claimed "special circumstances" begins with *United States v. Goldberger & Dubin, P.C.*, 935 F.2d 501 (2d Cir. 1991). In *Goldberger,* upon a law firm's refusal to file a completed Form 8300, the IRS issued a summons, subsequently enforced by the district court, directing the firm to produce its clients' names. On appeal, the attorneys argued that § 6050I's reporting requirements were unconstitutional and violative of the attorney-client privilege. We rejected both claims and affirmed the district court's order directing disclosure of the client-identifying information.

With respect to the attorney-client privilege, we held that "absent special circumstances ... the identification in Form 8300 of respondents' clients who make substantial cash payments is not a disclosure of privileged information." *Goldberger,* 935 F.2d at 505. Thus, we suggested that although a client's identity is generally not privileged, there might be "special circumstances" where such information would be protected from disclosure.[3]

Lefcourt relies on *Goldberger* 's reference to "special circumstances" to support the proposition that in this circuit, there are occasions when an attorney's noncompliance with § 6050I will be excused. The law firm argues further that *Goldberger* left open the possibility that one such special circumstance could be where the disclosure of the client-identifying information would "prejudice [the client's] interest and undermine [the law firm's] ability to provide effective representa-

---

**2.** On appeal, Lefcourt does not press the reasonableness of this argument.

**3.** We agree with the government that language in *Goldberger* can be read to suggest that Congressional enactment of § 6050I abrogates any claim of attorney-client privilege with respect to a Form 8300 filing. *See Goldberger,* 935 F.2d at 505 (noting that the attorney-client privilege would "surely" yield where it "collides head on with a federal statute"). Under this view, even if a court found special circumstances to exist whereby the provision of client identifying information would implicate the attorney-client privi-

lege, such privilege would nonetheless give way to § 6050I's reporting requirements. However, this language was dicta in *Goldberger* because the court found clearly that no special circumstances had been presented. *See id.; cf. Vingelli v. United States,* 992 F.2d 449, 453 (2d Cir.1993) (post-*Goldberger* decision recognizing special circumstances in which client-identity might be protected from compelled disclosure to a federal grand jury). We now have no occasion to decide whether, as *Goldberger* suggested, Congress intended to override the attorney-client privilege in all cases.

tion." Affidavit of Gerald B. Lefcourt, filed with IRS Form 8300, *reprinted in* Joint Appendix on Appeal at 284. We do not accept that reading of *Goldberger* and the cases on which *Goldberger* relied.

■ As a general rule, a client's identity and fee information are not privileged. *See In re Grand Jury Subpoena Served Upon John Doe, Esq.*, 781 F.2d 238, 247 (2d Cir. 1986) (in banc). Although the court in *Goldberger* did not elaborate on the meaning of the special circumstances exception to the rule, it offered some guidance as to what might and what might not constitute such a circumstance. Significant to this case, the court expressly rejected the essence of Lefcourt's claim when it stated that the "asserted possibility" that a client may be incriminated by disclosure does not constitute a special circumstance. *See* 935 F.2d at 505.

In so doing, the court cited *In re Grand Jury Subpoena Duces Tecum Served Upon Gerald L. Shargel*, 742 F.2d 61 (2d Cir.1984), which involved a defense attorney's appeal of a district court order denying a motion to quash a subpoena issued by a grand jury that sought to compel the attorney to produce records of money he had received from several clients who had been indicted for RICO violations. The government in *Shargel* admitted that the grand jury wanted the information as possible evidence that the defendants possessed unexplained wealth. *See id.* 742 F.2d at 62. Shargel argued that disclosure of the information would violate the attorney-client privilege by incriminating his clients in the RICO case. The court unequivocally rejected this "incrimination rationale" that Lefcourt now claims provided a reasonable basis for its own noncompliance:

> We have consistently held that client identity and fee information are, absent special circumstances, not privileged. This result follows from defining the privilege to encompass only those confidential communications necessary to obtain informed legal advice. This definition, which focuses upon facilitating the role of the lawyer as a professional advisor and advocate, is to be distinguished from the so-called "incrimination rationale," which focuses upon whether the materials sought may be used as evidence against the client. While the attorney-client privilege historically arose at the same time as the privilege against self-incrimination, it was early established that the privileges had distinct policies and that the "point of honor"—the attorney's reluctance to incriminate his client—was not a valid reason to invoke the attorney-client privilege.

*Shargel*, 742 F.2d at 62–63 (citations and footnote omitted). The court thus held that "information is not protected by the privilege even though the client may strongly fear the effects of disclosure, including incrimination." *Id.* 742 F.2d at 63.[4]

*Goldberger* and *Shargel*, read together, squarely reject the principal argument put forward by Lefcourt here: that possible or even likely client incrimination constitutes a special circumstance justifying nondisclosure. *See also Doe*, 781 F.2d at 247–48 (compelled disclosure of client identity and fee information that is incriminating evidence of unexplained wealth does not, "absent special circumstances," violate the attorney-client privilege).

Lefcourt attempts to avoid the force of *Goldberger* and *Shargel* by arguing that its case presents a unique twist on the incrimination rationale because the incrimination would have occurred in the very case for which the funds triggering the obligation to file a Form 8300 were expended as legal fees. Lefcourt contends that the reasonableness of this argument should excuse its noncompliance with § 6050I. It is evident to us that the fact of current representation is a distinction without a difference, and Lefcourt offers no authoritative support for the view that the attorney-client privilege forbids compelling disclosure of incriminating client-identifying information in cases of ongoing representa-

---

4. Lefcourt suggests without citation that *Shargel* may be distinguished on the ground that it involved a grand jury subpoena and not an IRS proceeding. Brief of Appeal of Gerald B. Lefcourt, P.C. at 21 n. 11. Because the same rules of attorney-client privilege apply in either context—rules developed by federal courts "in the light of reason and experience," Fed.R.Evid. 501—there is no basis for this distinction.

tion but in no other cases. *Shargel* itself was a case that involved active representation and the government there sought the fee information to use as evidence of the clients' unexplained wealth in the same RICO prosecution for which Shargel had been retained. 742 F.2d at 62.[5]

■ The foregoing argument by Lefcourt has been characterized by courts as the "legal advice exception," which holds client-identifying information privileged "where there is a strong probability that disclosure would implicate the client in the very criminal activity for which legal advice was sought." *In re Grand Jury Subpoenas (Anderson)*, 906 F.2d 1485, 1488 (10th Cir. 1990). However, this exception (which has been described by another court as one of "questionable validity," *see Anderson*, 906 F.2d at 1488) has never once been accepted in this circuit. In fact, we all but categorically rejected it in *Vingelli v. United States*, 992 F.2d 449 (2d Cir.1993), a case not cited by Lefcourt, where we took pains to distinguish the legal advice exception from the confidential communications exception that is recognized in this circuit. *Id.* 992 F.2d at 452–53 (citing *Shargel*, 742 F.2d at 62–63).

Thus the law is clear, and was so when Lefcourt refused to file its completed Form 8300: to the extent that the legal advice exception exists in any jurisdiction, it plainly is not recognized as a special circumstance in this circuit. Lefcourt's argument that non-disclosure in this case was warranted under the attorney-client privilege because the client-identifying "information could be used against the client in the very case in which the Firm was engaged to provide criminal defense representation," Brief of Appeal of Gerald B. Lefcourt, P.C. at 3—a phrase that parrots the classic definition of the legal advice exception set forth in *Anderson*, 906 F.2d at 1488—was not objectively reasonable.

Lefcourt next argues that incrimination in the very case for which the attorney was retained implicates (or could reasonably be

thought to implicate) the so-called "direct linkage" special circumstance that this court mentioned in *Goldberger*, 935 F.2d at 505. *See* Brief of Appeal of Gerald B. Lefcourt, P.C. at 25. If there is such an exception in this circuit outside of the Fifth Amendment context—a matter we do not decide—it must be derived from *Marchetti v. United States*, 390 U.S. 39, 48–49, 88 S.Ct. 697, 702–03, 19 L.Ed.2d 889 (1968), a case where the Supreme Court held that the Fifth Amendment privilege against self-incrimination was a defense in a prosecution for failing to register as a gambler under the IRS's wagering tax provisions where the "direct and unmistakable consequence" of registration would be to implicate the party registering in the crime of gambling. The present case does not remotely resemble the facts of *Marchetti*, a case in which disclosure of the information provided the proof necessary to convict the filer of the crime of gambling—where the statutory filing requirement produced, in effect, a compelled confession of criminal activity. Here, in contrast, the client was not compelled to pay the law firm in cash, but rather did so voluntarily. *See Goldberger*, 935 F.2d at 504 ("To avoid disclosure under section 6050-I, they need only pay counsel in some manner other than with cash. The choice is theirs."). Furthermore, the disclosure that a client consulted an attorney and paid that attorney in cash, although probative of unexplained wealth, does not link the defendant to a crime in the manner required by *Marchetti*. Rather, "seeking legal advice is as much a first step in demonstrating innocence as it is an admission of guilt." *Shargel*, 742 F.2d at 63 n. 3. And, most significantly, we have explicitly rejected claims of attorney-client privilege where disclosure of fee information might provide the government with evidence of unexplained wealth in a criminal case. *See Doe*, 781 F.2d at 248 ("Fee information may be sought as evidence of unexplained wealth which may have been derived from criminal activity.... As a general rule ... such information is not

---

5. In fact, *Shargel* arguably presents a *worse* case from a client's perspective than that presented here: in *Shargel*, there was no doubt that the information would be used against Shargel's clients, as that was the very purpose for which

the grand jury sought it. In the present case, the information was sought by the IRS pursuant to a general reporting requirement. Whether the IRS would forward it to the U.S. Attorney for prosecutorial purposes was not a certainty.

protected from disclosure by the attorney-client privilege."); *Shargel,* 742 F.2d at 63–64.

Lefcourt's final argument in defense of the reasonableness of its nondisclosure is that even if the Second Circuit does not consider it a special circumstance when disclosure would incriminate the client in the very case for which he or she hired the law firm, at least one district court in another circuit has so held, and thus, the law firm's belief that nondisclosure might be excused was reasonable. Lefcourt refers to *United States v. Gertner,* 873 F.Supp. 729, 735–36 (D.Mass. 1995), *aff'd on other grounds,* 65 F.3d 963 (1st Cir.1995), in which a district court in the First Circuit denied the IRS's petition to enforce a summons against an attorney who had failed to provide the client-identifying information called for by Form 8300. In so doing, the district court relied on the legal advice exception to disclosure of client-identifying and fee information mentioned in *Anderson,* 906 F.2d at 1488, and on the direct linkage exception noted in *Goldberger,* 935 F.2d at 505—an exception, we note, that the district court held to be satisfied because of the "strong probability that disclosure would not only incriminate John Doe, but incriminate him in the very activity for which he sought legal advice," *Gertner,* 873 F.Supp. at 736.

To the extent that the holding in *Gertner* relies on the legal advice exception, it is contrary to the law of this circuit for the reasons we have explained, and Lefcourt's reliance on it was therefore unreasonable. To the extent that *Gertner* purports to rely on the so-called direct linkage exception noted in *Goldberger,* it is plain to us that the district court misread our precedent. Our cases have consistently rejected the notion that incrimination in an active case—a scenario characterized by the *Gertner* court as implicating both the legal advice exception and the direct linkage exception—is a special circumstance that renders client-identifying and fee information privileged.

Lefcourt relies on another case outside of this circuit, *United States v. Sindel,* 53 F.3d 874, 876 (8th Cir.1995), in which, relying on *Goldberger,* the Eighth Circuit held that in-formation requested by IRS Form 8300 is protected by the attorney-client privilege only if the facts present a special circumstance. The court then conducted an *in camera* review of the allegedly privileged information and concluded that, with respect to one of the subpoenaed lawyer's clients, the information was entitled to protection from disclosure because it would have revealed a confidential communication between the client and the attorney. *Id.* This holding comports with Second Circuit law, which recognizes the confidential communication exception to the rule that client identity and fee information are not privileged. *See Vingelli,* 992 F.2d at 453. The Eighth Circuit's decision in *Sindel* thus in no way supports the reasonableness of Lefcourt's own nondisclosure.

Lefcourt does not rely on *Sindel* to support an argument that the confidential communication exception applies in this case. Rather, the law firm uses *Sindel* to support its broader contention that because special circumstances are on occasion found to exist, a wide range of arguments as to the existence of a special circumstance in a particular case is reasonable within the meaning of § 6724. *See* Brief of Appeal of Gerald B. Lefcourt, P.C. at 24. Whatever the worth of this dubious proposition as a general matter, it fails in a situation where there is authoritative precedent *rejecting* as a special circumstance the very same factors relied upon by an attorney with a duty to file a Form 8300—in this case, the possible incrimination of Lefcourt's client in an active case.

■ In sum, we conclude that Lefcourt had no reasonable basis for failing to provide the information required by § 6050I under the facts presented here. Although the contours of the special circumstance exception have not been exhaustively developed, no doubt due to the fact special circumstances are seldom found to exist, it is clear that there is no special circumstance in this circuit simply because the provision of client-identifying information could prejudice the client in the case for which legal fees are paid. *See Goldberger,* 935 F.2d at 505; *Doe,* 781 F.2d at 248; *Shargel,* 742 F.2d at 62–63; *cf. Vingelli,* 992 F.2d at 453. We believe that this

legal principle is firmly established and was so when the incomplete Form 8300 was filed. Thus we conclude that Lefcourt did not exercise the "standard of care that a reasonably prudent person would use under the circumstances in the course of its business in determining its filing obligations" in asserting otherwise. 26 C.F.R. § 303.6724–1(d)(i).

We therefore agree with the district court that Lefcourt has not established "reasonable cause" for its willful noncompliance with § 6050I.

## CONCLUSION

We have considered Lefcourt's remaining contentions, and find them to be without merit. We therefore affirm the judgment of the district court.