**Dick DEGUERIN and Lewis Dickson, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. Civ.A. H–01–1053.**

United States District Court, S.D. Texas, Houston Division.

Aug. 5, 2002.

B. Daryl Bristow, Baker Botts, David Gerger, Foreman DeGeurin et al., Houston, TX, for Plaintiffs.

Ralph F. Shilling, Jr., Dept. of Justice Tax Division, Dallas, TX, for Defendant.

## MEMORANDUM AND ORDER

LAKE, District Judge.

Pending before the court are the Motion for Summary Judgment (Docket Entry No. 24) filed by Dick DeGuerin and Lewis Dickson (collectively "Plaintiffs") and the Motion for Summary Judgment (Docket Entry No. 19) filed by the United States of America. For the reasons stated below, both motions will be denied.

### I. *Background and Facts*

#### A. Overview

This case marks the culmination of a dispute between the parties that has been brewing for more than a decade. As will be discussed in more detail below, under Internal Revenue Code ("IRC") § 6050I, any person who in the course of trade or business receives more than $10,000 in cash must report to the Internal Revenue Service ("IRS"), among other things, the name, address, and taxpayer identification number of the person from whom the cash was received. 26 U.S.C. § 6050I(b)(2)(a). IRS Form 8300, "Report of Cash Payments Over $10,000 Received in a Trade or Business," is the vehicle by which this information must be transmitted to the IRS. 26 C.F.R. § 1.6050I–1(e)(2). Form 8300 requests the name of the person from whom the cash was received (hereinafter "payer"), and the name of the person on whose behalf the transaction was conducted (hereinafter "beneficiary"). (*See, e.g.,* 1995 Form 8300, Docket Entry No. 24, Exhibit 76 at p. 188.)

This dispute involves penalties the IRS assessed against Plaintiffs for failing to include payer and beneficiary names on certain Form 8300s filed in 1995. The IRS contends that Plaintiffs "intentionally disregarded" their § 6050I filing obligations by failing to include the names. Plaintiffs argue that they should not be assessed penalties because at the time of filing they reasonably believed the names were protected from disclosure by the attorney-client privilege.

#### B. History of the Dispute Between the Parties

Dick DeGuerin and Lewis Dickson were partners in the law firm of DeGuerin & Dickson from 1982 to 1995. (DeGuerin Aff., Docket Entry No. 24, Exhibit 2 ¶ 3) Although the partnership dissolved in 1995, the two still practice law together, specializing in criminal defense work at both the trial and appellate levels. (DeGuerin Aff. ¶ 3) Over the years, Plaintiffs have been paid by or on behalf of their clients in cash amounts greater than $10,000 on a regular basis, necessitating the filing of an appreciable number of Form 8300s. In 1995 Plaintiffs filed a number of Form 8300s, nineteen of which were missing information (hereinafter the "1995 Form 8300s"). (1995 Form 8300s, Docket Entry No. 24, Exhibits 29, 76)

Plaintiffs' dispute with the IRS over the disclosure of allegedly privileged information began in 1989 when IRS agent Peter Orth began an inquiry regarding certain Form 8300s Plaintiffs had filed in 1989. (DeGuerin Aff. ¶ 14; Letter from Peter Orth, Docket Entry No. 24, Exhibit 15) While that inquiry was ongoing, in the spring and summer of 1990, DeGuerin received three summons seeking fee information that DeGuerin characterizes as similar to that sought by the Form 8300. (DeGuerin Aff. ¶ 14) DeGuerin believed Orth's Form 8300 inquiry and the summons activity were related. (DeGuerin Aff. ¶ 15) DeGuerin implies that the IRS was using its summons powers to circumvent DeGuerin's refusal to comply with the § 6050I filing requirements. (DeGuerin

Aff. ¶¶ 14, 15) Through letters from his lawyer, Samuel Buffone, DeGuerin refused to provide the information sought. (DeGuerin Aff. ¶ 14) The IRS did not take any further action to obtain the names omitted from the Form 8300s that were the subject of Orth's 1989 audit. (DeGuerin Aff. ¶ 16)

From 1990 to 1997 Plaintiffs continued to file Form 8300s omitting information when they believed it to be protected from disclosure by the attorney-client privilege. (Spear Aff., Exhibits a–e and h, Docket Entry No. 19, Exhibit 1) With each such Form 8300, Plaintiffs filed a statement explaining their reasons for the omission. (DeGuerin Aff. ¶ 17; e.g., Spear Aff., Exhibits c–e) In response to each of these incomplete forms Plaintiffs received a computerized notice from the IRS requesting the omitted information be provided. (DeGuerin Aff. ¶ 17; e.g., Spear Aff., Exhibits b–e) Plaintiffs responded to each notice by referring the IRS to the explanatory statement originally filed with the Form 8300. (DeGuerin Aff. ¶ 17; e.g., Spear Aff., Exhibits c–e) No other action was taken by the IRS during that time period. (DeGuerin Aff. ¶ 17)

In the fall of 1997, IRS agent Jerry Spear informed Plaintiffs that he would be conducting an audit of Form 8300s for the years 1995 through 1997.[1] (DeGuerin Aff. ¶ 20) On October 8, 1997, DeGuerin and Buffone attended a meeting with agent Spear and counsel for the IRS during which the parties discussed their legal positions regarding disclosure of client identification. (Buffone Aff., Docket Entry No. 24, Exhibit 1 ¶ 31) Thereafter, letters were exchanged and conversations were had in an effort to resolve the controversy between the parties. (Buffone Aff. ¶¶ 32–

34; Protest Letter, Docket Entry No. 24, Exhibit 27; Letter from Buffone, et al. to IRS, Docket Entry No. 24, Exhibit 28; Letter from Buffone, et al. to IRS, Docket Entry No. 24, Exhibit 29) On March 9, 1998, however, Plaintiffs received notice that they were being assessed penalties for intentionally disregarding their filing obligations under ¶ 6050I with respect to the 1995 Form 8300s. (Buffone Aff. ¶ 35)

Plaintiffs filed an administrative appeal with the IRS, which was denied on the ground that there was no adequate basis for the assertion of the attorney-client privilege. (Buffone Aff. ¶ 35; Letter from IRS to Plaintiffs' Counsel, Docket Entry No. 24, Exhibit 30) The IRS apparently stayed enforcement of the penalties during the pendency of the administrative appeal process. After the appeal agent Spear's audit continued and further attempts were made to resolve the matter, including referral of the case to the IRS National Office for review. (Buffone Aff. ¶¶ 36–38) Finally, on January 26, 2001, counsel for the IRS informed Plaintiffs that it would abate the penalties assessed for five of the 1995 Form 8300s but that it would lift the stay on the remaining assessments for that year and begin a collection action. (Letter from IRS, Docket Entry No. 24, Exhibit 31)

## C. Procedural Posture

On February 14, 2001, counsel for Plaintiffs sent a check in the amount of $12,000 to agent Spear in payment of the $25,000 penalty assessed with respect to the Form 8300 filed on February 9, 1995, and assigned IRS identification number 9504500826.[2] (Check, Docket Entry No. 1,

---

1. DeGuerin alleges that the IRS initiated this audit in retaliation because DeGuerin embarrassed an IRS agent on the witness stand during cross-examination at the 1997 trial of

James Manuel 'Smokey' Phillips. (DeGuerin Aff. ¶¶ 18–20)

2. The IRS owed Plaintiffs certain credits in connection with another matter. The credits

Exhibit A at p. 3) At the same time, Plaintiffs filed a Form 843[3] requesting a refund of the penalty assessed with respect to the February 9, 1995, Form 8300. (Form 843, Docket Entry No. 1, Exhibit A at p. 4) On March 12, 2001, the IRS denied Plaintiffs' request for a refund and advised Plaintiffs that they could file suit in the United States District Court to recover the amount of the penalty paid. (Letter from IRS, Docket Entry No. 1, Exhibit B) On March 28, 2001, Plaintiffs filed suit in this court seeking to recover the amount paid. (Complaint, Docket Entry No. 1) On May 29, 2001, the United States filed a counterclaim seeking to recover the unpaid penalties assessed with respect to the remainder of the incomplete Form 8300s filed by Plaintiffs in 1995. (United States' Answer and Counterclaim, Docket Entry No. 10) Both parties have filed motions for summary judgment.

## II. *Analysis*

### A. Summary Judgment Standard

Summary judgment is authorized when there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Facts are "material" if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact creates a "genuine issue" if, under the evidence, the trier of fact reasonably could resolve the factual dispute in favor of either party. *Id.* at 2511.

When the movant bears the ultimate burden of proof at trial, summary judgment *cannot be granted unless the movant* makes a showing on each required element and the nonmovant's response fails to raise

a genuine issue of material fact as to any element. *See Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986); *National State Bank v. Federal Reserve Bank*, 979 F.2d 1579, 1582 (3d Cir.1992). A court must "view the evidence presented through the prism of the substantive evidentiary burden" that would operate at trial. *Anderson*, 106 S.Ct. at 2513.

### B. An Overview of the Statutory Scheme

1. *The Form 8300 Reporting Requirement*

IRC § 6050I(a) states

(a) Cash receipts of more than $10,000.—Any person—

 (1) who is engaged in a trade or business, and

 (2) who, in the course of such trade or business, receives more than $10,000 in cash in 1 transaction (or 2 or more related transactions),

shall make the return described in subsection (b) with respect to such transaction (or related transactions) at such time as the Secretary may by regulations prescribe.

IRC § 6050I(b)(2) states that

"[a] return is described in this subsection if such return

(2) contains—

 (A) the name, address, and TIN of the person from whom the cash was received,

 (B) the amount of cash received;

 (C) the date and nature of the transaction, and

 (D) such other information as the Secretary may prescribe."

---

plus the $12,000 check covered the $25,000 fine. (Letter, Docket Entry No. 1, Exhibit A at 1)

**3.** Form 843 is entitled "Claim for Refund and Request for Abatement."

Although there are statutory exceptions to the reporting requirement, none of them exempts an attorney from reporting his client's name or fee information.

The regulations enacted pursuant to IRC § 6050I require that a Form 8300 be filed with the IRS by the fifteenth day after the date the cash is received. 26 C.F.R. § 1.6050I–1(e)(1), (2). The form must include all of the statutorily required information, as well as any other information required by the form itself. 26 C.F.R. § 1.6050I–1(e)(2).

### 2. *Intentional Disregard*

IRC § 6721(a) imposes a penalty of $50 for each failure to file a Form 8300 on or before the required filing date or failure to include all of the information required to be shown on the form. However, IRC § 6721(e) provides for enhanced penalties in certain situations.

(e) **Penalty in case of intentional disregard.**—If 1 or more failures described in subsection (a)(2) are due to intentional disregard of the filing requirement (or the correct information reporting requirement), then, with respect to each such failure—

. . . . .

(2) the penalty imposed under subsection (a) shall be $100, or, if greater—

. . . . .

(C) in the case of a return required to be filed under section 6050I(a) with respect to any transaction (or related transactions), the greater of—

(i) $25,000, or

(ii) the amount of cash (within the meaning of section 6050I(d) received in such transaction (or related transactions) to the extent such cash does not exceed $100,000 ...)

### 3. *Reasonable Cause*

IRC § 6724(a) provides that "[n]o penalty shall be imposed under this part with respect to any failure if it is shown that such failure is due to reasonable cause and not to willful neglect." Thus, even if a person intentionally disregards the § 6050I reporting requirements, he will not be subject to any penalty if he can show reasonable cause for his non-compliance.

### C. Application of the Law to the Facts of this Case

Plaintiffs do not dispute that they omitted information from several Form 8300s filed in 1995. (1995 Form 8300s, Docket Entry No. 24, Exhibit 76) Nor do Plaintiffs dispute that they were fully aware of and understood the § 6050I filing requirements. (DeGuerin Aff., Docket Entry No. 24, Exhibit 2 ¶ 10) Plaintiffs do not contend that they were not in possession of all the information necessary to complete the Form 8300s in a timely manner had they chosen to do so. (*See, e.g.,* Letter Accompanying Form 8300, Docket Entry No. 24, Exhibit 76 at p. 189 (stating that DeGuerin routinely obtained and maintained the information sought in Form 8300).) The central issues in this case are whether Plaintiffs' failure to provide information on the 1995 Form 8300s, claiming the attorney-client privilege, amounted to intentional disregard of their filing obligations under IRC § 6050I and whether the penalties should be waived because Plaintiffs had reasonable cause for omitting the information.

### 1. *Summary of the Parties' Contentions*

Plaintiffs argue that penalties for intentional disregard of their filing obligations are not warranted because they did not act

"willfully" in omitting information from the Form 8300s. Because they believed they were not required to report privileged information to the IRS, and because they believed the omitted information was privileged, Plaintiffs argue that their failure to fully complete the 1995 Form 8300s was not "willful" and was thus not in "intentional disregard" of the filing requirements.

Alternatively, Plaintiffs argue that even if they intentionally disregarded their filing obligations, no penalties are warranted because Plaintiffs acted with "reasonable cause" and not with "willful neglect" within the meaning of the IRC § 6724 waiver provision.[4] Plaintiffs contend that they did everything within their power to determine their filing obligations and acted as any reasonable attorney would under the same or similar circumstances. Plaintiffs also argue that the rules of professional responsibility and the attorney-client privilege not only allow them to withhold their clients' identities, but actually forbid them from disclosing their clients' identities without authorization.

Plaintiffs also argue that the penalties in this case are "arbitrary and capricious" because the IRS abated the penalties with respect to some of the 1995 Form 8300s but not with respect to others, even though the factual showings with respect to them were similar. Plaintiffs argue that this "arbitrary and capricious" abatement of penalties demonstrates that there is no genuine issue of material fact as to whether the penalties were warranted.

Plaintiffs also argue that the court should use its equitable powers to grant Plaintiffs' summary judgment motion because the penalties were assessed out of vindictiveness and retaliation and because they are entitled to summary judgment on the grounds of equitable estoppel, judicial estoppel, and laches.

The United States argues that Plaintiffs did not have a valid reason to believe that a client's identity could be protected from disclosure by the attorney-client privilege when the Form 8300s were filed in 1995. The United States argues that intentional disregard penalties were warranted because Plaintiffs knew of the IRC § 6050I filing requirements and knew that their clients' identities must be reported, but chose not to do so. The United States argues that the reasonable cause waiver does not apply in this case because there are no "significant mitigating factors" as required by IRS regulations. The United States also argues that even if a client's identity might be privileged under certain circumstances, Plaintiffs have failed to establish that they believed such circumstances existed at the time the 1995 Form 8300s were filed.

### 2. The Burden of Proof

 Because the assessment of a penalty by the IRS is entitled to a presumption of correctness, the party opposing the penalty normally has the burden of proving that the penalty assessment was erroneous. *Sandvall v. Commissioner*, 898 F.2d 455, 459 (5th Cir.1990); *Marcello v. Commissioner*, 380 F.2d 499, 507 (5th Cir. 1967). *Citing Dellacroce v. Commissioner*, 83 T.C. 269, 1984 WL 15606 (Tax Court 1984), Plaintiffs argue that the presumption of correctness does not apply in this case because the penalties were assessed

4. Plaintiffs argue that a person acts with intentional disregard only if his actions were willful. Plaintiffs also argue that a person's actions cannot be willful if they acted with reasonable cause. It thus appears that Plaintiffs are arguing that a finding of reasonable cause precludes a finding of intentional disregard and compels the application of the IRC § 6724 waiver.

as the result of unconstitutional conduct on the part of the IRS.[5] According to Plaintiffs, the burden of proof should be on the United States to show that the penalties assessed are correct. The court disagrees.

Plaintiffs have failed to show that the penalties in this case were assessed as the result of unconstitutional conduct. According to Plaintiffs, the IRS began the 1997 audit only after DeGuerin had embarrassed an IRS agent on cross-examination during a high profile criminal trial. Plaintiffs cite evidence that IRS special agent Elizabeth Wiggington desired to retaliate against Plaintiffs by forcing them to spend a great deal of money in defending against a Form 8300 audit. (D'Amico Aff., Docket Entry No. 24, Exhibit 4 at p. 2) Even if these facts are true, Plaintiffs have not explained how the Constitution has been violated. Plaintiffs have not even stated which constitutional right they believe has been violated. Not every bad act by the government is a violation of the United States Constitution.

Plaintiffs also argue that because the IRS abated the penalties with respect to some, but not all, of the forms under similar facts, the IRS's assessment of penalties was arbitrary and capricious, thus shifting the burden of proof to the government. Plaintiffs do not dispute that they omitted

information from several Form 8300s filed during 1995. The penalties in this case were assessed because of those omissions. The court therefore sees no reason to shift the burden of proof to the United States. *Dellacroce,* 1984 WL 15606, 83 T.C. at 287; *see also Sealy Power, Ltd. v. Commissioner,* 46 F.3d 382, 387 (5th Cir.1995) (refusing to shift the burden of proof and holding that the burden in a case where the Commissioner rejects a deduction or credit, as distinguished from a case where the Commissioner claims the taxpayer underreported his income, should always remain on the taxpayer because the taxpayer is the best source of information concerning entitlement to the claimed deduction of credit).

### 3. Were Plaintiffs Obligated to Report their Client's Identities on the Form 8300s?

Before any analysis of intentional disregard or reasonable cause is undertaken the court must first determine whether Plaintiffs had any obligation to report the omitted information in the first place. It is important to note that in this case the parties seek only to recover money. The United States is not seeking the information omitted from the 1995 Form 8300s. However, if the United States was not

5. *Dellacroce* does not stand for the proposition for which Plaintiffs cite it—that the burden of proof shifts to the government when it is shown that the penalty was assessed as the result of unconstitutional conduct. In *Dellacroce* the Commissioner of Internal Revenue determined that the taxpayer had failed to report certain income for the 1965 tax year. *Dellacroce,* 1984 WL 15606, 83 T.C. at 271. This deficiency determination was based solely upon hearsay evidence. *Id.* 1984 WL 15606, 83 T.C. at 284. The issue before the court was whether the deficiency determination was arbitrary and thus not entitled to the presumption of correctness. The government argued that the deficiency should not be held arbitrary because evidence of the taxpayer's

failure to report income could be inferred from the taxpayer's refusal to answer certain questions during discovery on Fifth Amendment grounds. The Tax Court declined to draw such a negative inference and found that, absent the inference, there was no admissible evidence in the record to support the deficiency determination. *Id.* 1984 WL 15606, 83 T.C. at 286. Because it was not supported by any admissible evidence, the court concluded that the Commissioner's deficiency determination was arbitrary and not entitled to a presumption of correctness. *Id.* 1984 WL 15606, 83 T.C. at 287. Absent the presumption of correctness, the burden shifted to the Commissioner to demonstrate that the deficiency determination was correct. *Id.*

entitled to the omitted information in the first instance, then no penalties were warranted.

Plaintiffs refused to disclose information identifying some of the persons that paid them in cash on the ground that their names were privileged. The law has long been settled that a client's identity and fee information are not normally privileged. *In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 670–71 (5th Cir.1975). However, as will be discussed in more detail below, there are exceptions to this rule and, under certain circumstances, a client's identity may be protected from disclosure by the attorney-client privilege.

■ Every reported appellate opinion to have considered the issue has either expressly held (or has at least left open for consideration) that privileged information need not be disclosed to the IRS on a Form 8300. *United States v. Sindel,* 53 F.3d 874, 876 (8th Cir.1995); *United States v. Blackman,* 72 F.3d 1418, 1426 (9th Cir. 1995) (expressly recognizing that where fee payer identity is privileged compliance with § 6050I is excused, but noting that "[w]e are hard pressed to imagine such a case"); *United States v. Leventhal,* 961 F.2d 936, 940 (11th Cir.1992); *United States v. Goldberger & Dubin, P.C.,* 935 F.2d 501, 506 (2d Cir.1991) (noting that only in "special circumstances" will client and fee information be protected); *Lefcourt v. United States,* 125 F.3d 79, 86 (2d Cir.1997) (citing *Goldberger & Dubin* and confirming that "special circumstances" might excuse disclosure of privileged information). Because privileged information need not be disclosed on a Form 8300, a client's name need not be disclosed on a Form 8300 if it is privileged. But a client's name and fee information will only be considered privileged in a few, very narrow, special circumstances. In other words, if the information withheld from the

1995 Form 8300s was in fact privileged, Plaintiffs were excused from disclosing it and no penalties were warranted. The critical question is whether the omitted names were privileged.

On several occasions the Fifth Circuit has considered whether a client's identity and fee information are privileged. Because the parties vehemently disagree about the law on this point, a short discussion of the leading Fifth Circuit authorities is required. In *In re Grand Jury Proceedings (Jones),* 517 F.2d 666, 668 (5th Cir.1975), the United States subpoenaed several attorneys to appear before a federal grand jury to answer questions regarding payment of their fees for certain clients. The attorneys refused to answer questions regarding the identities of third parties who might have paid the legal fees of the attorneys' known clients. *Id.* at 669. The court explained that

[j]ust as the client's verbal communications are protected, it follows that other information, not normally privileged, should also be protected when so much of the substance of the communications is already in the government's possession that additional disclosures would yield substantially probative links in an existing chain of inculpatory events or transactions.

*Id.* at 674.

A few years later the Fifth Circuit, *en banc,* expressly recognized the "limited and narrow exception" stated in *Jones* as "one that obtains when the disclosure of the client's identity by his attorney would have supplied the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." *In re Grand Jury Proceedings (Pavlick),* 680 F.2d 1026, 1027 (5th Cir.1982) (en banc). The *Pavlick* court also noted that *Jones* rested on its peculiar facts and " 'should not be taken as any indication of how we

would decide a similar question if the in-culpatory value of sought-after testimony were less obvious or largely attenuated.' " *Id.* Plaintiffs read these cases as establishing a "last link" exception to the general rule that client identity is not normally privileged. According to Plaintiffs, if the revelation of a client's identity would provide probative links in a chain of evidence against the client, the client's name is privileged.

The Fifth Circuit clarified the rules relating to disclosure of client identity and fee information in *In re Grand Jury Subpoena for Attorney Representing Reyes–Requena,* 913 F.2d 1118 (5th Cir.1990) (hereinafter *"Reyes–Requena I"*). In *Reyes Requena I* Dick DeGuerin, one of the Plaintiffs herein, represented his brother Mike DeGeurin [6] in connection with a grand jury subpoena that sought disclosure of the identity of the person that paid the legal fees for one of Mike DeGeurin's clients.

The court reemphasized that matters relating to the payment of fees and client identity are not generally privileged. *Id.* at 1123. The court pointed out that the holding in *Jones* is somewhat misleading in its seeming extension of the attorney-client privilege to information that is merely inculpatory, but not privileged in the traditional sense, and explained that the privilege only reaches *communications* between attorney and client. *Id.* at 1124–25 n. 11. The court explained that "a proper reading of *Jones,* followed by *Pavlick* demonstrates that those cases did not fashion a 'last link' or 'affirmative link' attorney-client privilege independent of the privileged communication between an attorney and his client." *Id.* at 1124.

According to the Fifth Circuit, the "last link" or "affirmative link" exceptions dis-cussed in *Jones* and *Pavlick* did "not significantly amend the normal scope of the attorney-client privilege." *Id.* "[T]he attorney-client privilege shields the identity of a client or fee information only where revelation of such information would disclose other privileged communications such as the confidential motive for retention." *Id.* at 1125 (noting that this principle is reconcilable with *Jones* ). The *Reyes–Requena I* court held that the subpoena should not have been quashed because De-Geurin had failed to show that disclosure of the fee payer's identity would reveal a privileged communication because no evidence was presented that the fee payer was DeGeurin's client. *Id.* at 1126.

On appeal after remand, in *In re Grand Jury Subpoena for Attorney Representing Reyes–Requena,* 926 F.2d 1423, 1432–33 (5th Cir.1991) (hereinafter *"Reyes–Requena II"*), the Fifth Circuit held that the identity of the person who paid Mike De-Geurin's fees was privileged. The court did not apply a "last link" exception or ground its decision upon the fact that revealing the fee-payer's identity may incriminate the fee-payer. Instead, the court applied the law it had set forth in *Reyes–Requena II, id.* at 1431 n. 7, and held that the fee-payer's identity was privileged in light of evidence that DeGeurin had been hired to represent Reyes–Requena and the fee-payer jointly and that revelation of the fee-payer's identity would also reveal the confidential motive for which the fee-payer had hired DeGeurin, *id.* at 1432. The court reiterated that "even if the anonymous benefactor were DeGeurin's client, his identity and fee arrangements are privileged only if intertwined with confidential communications made for the purpose of obtaining legal advice *for the anonymous benefactor."* *Id.* (citing *Reyes–Requena I* ) (emphasis in original).

**6.** The brothers spell their last names different-ly.

■ The law in the Fifth Circuit is clear. The attorney-client privilege protects only confidential communications between attorney and client made for the purpose of securing legal advice. *Jones,* 517 F.2d at 670. If revelation of a client's identity would also reveal a privileged communication, both the identity and the communication are privileged. *Reyes–Requena II,* 926 F.2d at 1431. In one specific application of these principles, because a client's confidential purpose for seeking legal advice may be privileged, *id.,* a client's identity may be protected from disclosure if its revelation will also reveal the confidential purpose for which the client sought legal advice.

■ Applying these legal principles to the facts of this case to decide whether the names withheld from the 1995 Form 8300s were privileged, the court must determine whether the person whose name was withheld was Plaintiffs' client and whether disclosure of the name would also reveal a confidential communication between attorney and client. The evidence presented by Plaintiffs is not sufficient for the court to conclude as a matter of law that any of the names omitted from any of the subject Form 8300s were privileged.

Plaintiffs have not explained specifically with respect to each of the forms what privileged communication would be revealed by disclosure of the omitted name. For example, Plaintiffs base their claim of privilege with respect to one of the Form 8300s on the following facts:

At the time of the payment, the client was under arrest for the possession of marijuana. At the time he was arrested, the client was in a vehicle that belonged to a relative. The relative made the payment to [Plaintiffs] to represent the beneficiary on the marijuana charges, and also sought legal advice from [Plaintiffs] concerning his potential

exposure to criminal charges arising from the same underlying activity. The benefactor was never indicted and it is unknown whether he was ever investigated in connection with this activity. The beneficiary pled guilty.

(Factual Basis for Claim of Privilege (Tab 1), Docket Entry No. 24, Exhibit 29 at 37) From these facts it is not clear what privileged communication would have been disclosed had Plaintiffs included the fee-paying benefactor's name on a Form 8300. The fact that upon disclosure of the benefactor's name the government might have been inclined to initiate an investigation of the benefactor does not transform the benefactor's name into a privileged communication. Moreover, even applying the somewhat questionable "last link" exception as stated in *Pavlick,* it is not clear on these facts how providing the omitted name would have "provided the last link in an existing chain of incriminating evidence likely to lead to the client's indictment." *See Pavlick,* 680 F.2d at 1027.

Similarly, Plaintiffs base their claim of privilege with respect to another of the Form 8300s on the following facts:

The client and his/her spouse were both arrested and charged in state court with possession with intent to distribute cocaine. The spouse was represented by separate counsel. The client pled guilty and is in prison.

(Factual Basis for Claim of Privilege (Tab 2), Docket Entry No. 24, Exhibit 29 at 38) On the basis of these facts alone it is not clear that a privileged communication would be disclosed by the disclosure of either the client's or the client's spouse's name on a Form 8300. The client's spouse was not Plaintiffs' client, and since the client pleaded guilty, his identity was apparently not a confidential matter. Again, there is no indication that revelation of the omitted

information would have provided the "last link" in a chain of incriminating evidence.

The factual showings with respect to the rest of the 1995 Form 8300s are similar to these two examples. Because Plaintiffs have not presented sufficient evidence to demonstrate that the information withheld from the 1995 Form 8300s was privileged, the court cannot conclude as a matter of law that Plaintiffs had no obligation to supply the names requested on the 1995 Form 8300s. Because Plaintiffs have not established as a matter of law that they had no duty to disclose the names omitted from the 1995 Form 8300s, the court must proceed to analyze whether the Plaintiffs intentionally disregarded their filing obligations, and, if so, whether Plaintiffs had reasonable cause for doing so.

### 4. Did the Plaintiffs Intentionally Disregard their Reporting Obligation?

Under IRC § 6721(e), the penalties for failure to comply with § 6050I are enhanced if the failure is due to "intentional disregard" of the filing requirement. The parties disagree about the meaning of the phrase "intentional disregard." The United States argues that a person intentionally disregards the filing requirement if he knows of the filing requirement and knowingly or willfully disregards it. Plaintiffs argue that a person does not have the requisite mens rea for intentional disregard if he has "reasonable cause" for failing to comply with the filing requirement.

The Internal Revenue Code does not define "intentional disregard," but the Treasury Regulations state that "[a] failure is due to intentional disregard if it is a knowing or willful (i) failure to file timely, or (ii) failure to include correct information." 26 C.F.R. § 301.6721–1(f)(2). Whether such a failure is knowing or willful "is determined on the basis of all the facts and circumstances in the particular case." 26 C.F.R. § 301.6721–1(f)(2)(ii). 26 C.F.R. § 301.6721–1(f)(3) set a forth examples of the facts and circumstances that may be taken into account:

(3) *Facts and circumstances considered.* The facts and circumstances that are considered in determining whether a failure is due to intentional disregard include, but are not limited to—

(i) Whether the failure to file timely or the failure to include correct information is part of a pattern of conduct by the person who filed the return of repeatedly failing to file timely or repeatedly failing to include correct information;

(ii) Whether correction was promptly made upon discovery of the failure;

(iii) Whether the filer corrects a failure to file or a failure to include correct information within 30 days after the date of any written request from the Internal Revenue Service to file or to correct; and

(iv) Whether the amount of the information reporting penalties is less than the cost of complying with the requirement to file timely or to include correct information on an information return.

26 C.F.R. § 301.6721–1(f)(3). These examples of facts and circumstances indicate that "intentional disregard" has nothing to do with a person's justification for failing to comply with the filing requirements. Instead, these examples show that a court should consider whether the person has voluntarily, as opposed to mistakenly, failed to comply with the filing requirements.

■ For example, a pattern of failing to comply with the filing requirements sug-

gests the absence of a mistake, and a person's prompt correction of a failure suggests the presence of a mistake. Similarly, the fact that a person failed to comply under circumstances where the cost of complying was greater than the penalty for not complying suggests a calculated, as opposed to a mistaken, decision to disregard the filing requirement. In *Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997), the only federal appellate court that has directly considered the meaning of "intentional disregard" in the context of IRC § 6721, the court explained that

> the 'intentional disregard' set forth in § 6721's penalty provision means conduct that is willful, a term which in this context requires only that a party act voluntarily in withholding requested information, rather than accidentally or unconsciously. Once it is determined . . . that the failure to disclose client-identifying information was done purposefully, rather than inadvertently, it is irrelevant that the filer may have believed he was legally justified in withholding such information. The only question that remains is whether the law required the disclosure.

The court concludes that a person intentionally disregards a filing requirement when he knows of the requirement and has the ability to comply with it but fails to comply purposefully and not mistakenly.

■ It is undisputed in this case that Plaintiffs were aware of the filing requirements of § 6050I (DeGuerin Aff., Docket Entry No. 24 ¶ 10), had possession of the information required on the Form 8300s (*e.g.*, Attachment to Form 8300, Docket Entry No. 24, Exhibit 79 at p. 174), and were thus capable of providing that infor-

mation had they chosen to do so. Plaintiffs do not allege that they withheld the names accidentally. It is therefore undisputed that Plaintiffs withheld information required by IRC § 6050I purposefully and voluntarily, and not as a result of mistake or accident. The court therefore concludes as a matter of law that, to the extent that the information omitted from the 1995 Form 8300s was not in fact privileged,[7] it was withheld in intentional disregard of the § 6050I filing requirement.

### 5. *Did the Plaintiffs Have Reasonable Cause for Omitting their Clients' Identities from the Form 8300s?*

Even if Plaintiffs intentionally disregarded their § 6050I filing obligations, they are not subject to any penalty if their failure to report the information was "due to reasonable cause and not to willful neglect." IRC § 6724(a). The Treasury Regulation that defines reasonable cause allows a waiver of the penalty only if the person can establish that (i) there are significant mitigating factors with respect to the failure, or (ii) the failure arose from events beyond the filer's control, but in any event, the person must show that he acted in a "responsible manner" both before and after the failure occurred. 26 C.F.R. § 301.6724–1(a)(2). Acting in a "responsible manner" means

> (i) [t]hat the filer exercised reasonable care, which is that standard of care that a reasonably prudent person would use under the circumstances in the course of its business in determining its filing obligations . . . and

> (ii) [t]hat the filer undertook significant steps to avoid or mitigate the failure.[8]

---

7. Information that was in fact privileged did not need to be disclosed. See Part II.C.3, *supra*.

8. Mitigation is a factor in both the general definition of "reasonable cause" under 26 C.F.R. § 301.5724–1(a)(2)(i), and in the definition of "responsible manner" under 26

26 C.F.R. § 301.6724–1(d). In the context of withholding information from a Form 8300, the Second Circuit explained that "if a reasonable attorney would have no basis for concluding that nondisclosure of client-identifying information was justified under existing law, the attorney-client privilege cannot serve to excuse the imposition of a penalty under § 6721." *Lefcourt,* 125 F.3d at 85.

The parties' arguments center on whether Plaintiffs acted in a responsible manner in omitting information from the 1995 Form 8300s. The United States argues that as of 1995, the great weight of authority across the United States held that client identifying information was not privileged, and that even if such information were privileged, IRC § 6050I preempts any state ethical rule that might prevent a lawyer from disclosing his client's identity and fee information to the Internal Revenue Service. The United States also argues that Plaintiffs cannot show that they undertook significant steps to mitigate their failure to file as is required by 26 C.F.R. § 301.6724–1(d)(ii). Plaintiffs argue that not only did they take significant steps to mitigate their failure to file, but they did everything possible to determine their filing obligations and thereafter formed a good faith belief that they were not obligated to provide the omitted names.

■■■ Although there is ample authority for the proposition that client identity and fee information is not generally privileged, as explained above, in the Fifth Circuit such information is privileged if its disclosure is so intertwined with a confidential communication between attorney and client that disclosure of the identity or fee

information would also disclose the communication. *See* Part II.C.3, *supra.* Therefore, for Plaintiffs to show that they acted in a "responsible manner" within the meaning of 26 C.F.R. § 301.6724–1(d), they must demonstrate that they had a reasonable basis for believing, at the time the Form 8300s were filed, that disclosure of the client's identity would also disclose a confidential attorney-client communication. 26 C.F.R. § 301.6724–1(d)(i); *Lefcourt,* 125 F.3d at 85. Plaintiffs must also demonstrate that they "undertook significant steps to avoid or mitigate the[ir] failure [to file]." 26 C.F.R. § 301.6724–1(d)(ii).

■■■ Although the record contains substantial evidence to show that Plaintiffs acted reasonably in attempting to determine the contours of their filing obligations, a question of fact remains as to whether, with respect to each individual Form 8300, Plaintiffs had reason to believe the omitted information was privileged. Specifically, Plaintiffs have submitted the affidavit of their attorney, Samuel J. Buffone, that demonstrates that Plaintiffs were advised by an attorney who had significant knowledge of the Form 8300 filing requirements as well as the law of attorney-client privilege as it relates to client identity. (Buffone Aff., Docket Entry No. 24, Exhibit 1 ¶¶ 1–4, 9, 18, 20, 24–28) Mr. Buffone advised Plaintiffs with respect to the law generally and with respect to the specific Form 8300s that Plaintiffs filed. (*See generally* Buffone Aff.) However, Mr. Buffone's affidavit is devoid of any specific facts about any of the individual 1995 Form 8300s that would show that Plaintiffs had a good faith belief in their claims of privilege. The fact that Plaintiffs went to great lengths to learn the law governing

---

C.F.R. § 301.6724–1(d)(ii). Because Plaintiffs are not arguing that their failures to file arose from events beyond their control, they must, if at all, fall under the "significant miti-

gating factors" prong of reasonable cause. The court will address all of the mitigating factors at once to avoid confusion.

their filing obligations does not compel the conclusion that, as to the specific Form 8300s at issue, Plaintiffs had a reasonable belief in their claims of privilege.

Plaintiffs have also presented DeGuerin's own affidavit, which demonstrates that he undertook significant independent research to determine his filing obligations. (*See, e.g.,* DeGuerin Aff., Docket Entry No. 24, Exhibit 2 ¶¶ 11, 12 (detailing the dozens of sources of information relied upon in determining his filing obligations).) But DeGuerin's affidavit does not present specific facts as to each of the 1995 Form 8300s to demonstrate that in 1995, DeGuerin had a reasonable basis to believe that each omitted name was privileged. Dickson's affidavit suffers from the same defect. (Dickson Aff., Docket Entry No. 24, Exhibit 3 ¶ 11)

Both DeGuerin and Dickson state that they had a good faith belief that the information withheld was privileged and that their actions in omitting such information were consistent with the standard of care to which a criminal defense practitioner at the time would have adhered. (DeGuerin Aff. ¶ 10; Dickson Aff. ¶ 11) However, such broad, conclusory statements will not suffice at the summary judgment stage to demonstrate reasonable cause under IRC § 6724. *Cf. Reyes–Requena I,* 913 F.2d at 1126 (finding Mike DeGeurin's conclusory affidavit insufficient to demonstrate the privileged nature of the withheld name absent a showing that there was a confidential communication involved in the fee arrangement with Reyes–Requena).

Moreover, the documents that Plaintiffs have provided do not contain facts sufficient to demonstrate that Plaintiffs were reasonable in their belief that the withheld names were privileged. Plaintiffs have attached to their motion a set of nineteen documents, each entitled "Factual Basis For Claim Of Privilege" and each corresponding to one of the 1995 Form 8300s. (Docket Entry No. 24, Exhibit 29 at pp. 37–54) Although these documents give some general information relating to the type of representation undertaken and the relationship of the benefactor and beneficiary to the representation, none make clear what privileged communication Plaintiffs believed would be disclosed or why Plaintiffs believed the mere inclusion of the client's name on a Form 8300 would disclose that communication. (Docket Entry No. 24, Exhibit 29) To the extent that Plaintiffs were applying the *Pavlick/Jones* "last link" exception, none of these documents contain sufficient facts to show that Plaintiffs had a reasonable belief that disclosure of the omitted name would form the last link in an existing chain of inculpatory evidence likely to lead to an indictment.

Similarly, the attachments to each Form 8300 submitted to the IRS in 1995 do not provide specific factual information to demonstrate that Plaintiffs were reasonable in their belief that the names were privileged. (Docket Entry No. 24, Exhibit 79) In fact, each of the attachments, although pertaining to a different Form 8300, recites the same conclusory, boilerplate statement that Plaintiffs had a good faith belief in the claim of privilege. (*See, e.g.,* Attachment to Form 8300, Docket Entry No. 24, Exhibit 79 at p. 174.) A question of fact therefore remains whether Plaintiffs reasonably believed that each omitted name was protected from disclosure by the attorney-client privilege.

Referring again to the definitions of "reasonable cause" and "responsible manner" under 26 C.F.R. § 301.6724–1(a) and (d), Plaintiffs must demonstrate both that "there are significant mitigating factors with respect to the failure," 26 C.F.R. § 301.6724–1(a)(2)(i), and that they "undertook significant steps to avoid or miti-

gate the failure" in order to have their penalties waived under IRC § 6724. A non-exclusive list of "significant mitigating factors" referred to in 26 C.F.R. § 301.6724–1(a)(2)(i) is contained in subparagraph (b) of that regulation:

The mitigating factors include, but are not limited to—

(1) The fact that prior to the failure the filer was never required to file the particular type of return or furnish the particular type of statement with respect to which the failure occurred or

(2) The fact that the filer has an established history of complying with the information reporting requirement with respect to which the failure occurred. In determining whether the filer has such an established history, significant consideration is given to—

 (i) Whether the filer has incurred any penalty under § 301.6721 ... in prior years for the failure ..., and

 (ii) If the filer has incurred any such penalty in prior years, the extent of the filer's success in lessening its error rate from year to year.

26 C.F.R. § 301.6724–1(b). A non-exclusive list of the "significant steps to avoid or mitigate the failure" referred to in subparagraph (d) include

(A) requesting appropriate extensions of time to file, when practicable, in order to avoid the failure,

(B) attempting to prevent an impediment or a failure, if it was forseeable,

(C) acting to remove an impediment or the cause of a failure, once it occurred, and

(D) rectifying the failure as promptly as possible once the impediment was

removed or the failure was discovered....

26 C.F.R. § 301.6724–1(d)(1)(ii)(A–D).

Plaintiffs recite several facts to show that they took significant steps to mitigate their failures in this case. For example, in 1990 Plaintiffs requested that the IRS initiate judicial enforcement proceedings so that they could be ordered to disclose the omitted names rather than being put in the position of having to voluntarily disclose them. (Buffone Aff., Docket Entry No. 24, Exhibit 1 ¶ 15) Plaintiffs requested that their clients allow them to disclose their names on the Form 8300s. (Dickson Aff., Docket Entry No. 24, Exhibit 3 ¶ 10) Plaintiffs also note that between 1989 and 1997, their "Attachment[s] to the Form[s] 8300" appeared to have satisfied the IRS. (DeGuerin Aff., Docket Entry No. 24, Exhibit 2 ¶ 17)

Despite Plaintiffs' firm belief that their actions constitute "significant steps to mitigate" their failures, this assessment is inherently one for a finder of fact. A finder of fact will have to balance Plaintiffs' evidence of mitigation against the facts that, for example, Plaintiffs, with full knowledge of the § 6050I filing requirements, took cash in amounts greater than $10,000 instead of requiring a different payment method or refusing the representation altogether, and that Plaintiffs did not amend the vast majority of the 1995 Form 8300s after their clients were convicted or acquitted.

The United States argues that, even if the omitted names were privileged, an attorney may nevertheless divulge them in order to comply with IRC § 6050I. There is authority for the proposition that in 1995, a reasonable attorney could, without running afoul of the rules of professional responsibility, disclose a client's identity even if privileged. Rule 1.05(c)(4) of the Texas Disciplinary Rules of Professional

Conduct, Tex.Govt.Code, Title 2, Subtitle G, App. A, Art. 10, § 9 (hereinafter "Rule 1.05"), states that a lawyer may reveal confidential information "[w]hen the lawyer has reason to believe it is necessary to do so in order to comply with a court order, a Texas Disciplinary Rules of Professional Conduct, *or other law.*" Rule 1.05(c)(4) (emphasis added). According to the United States, IRC § 6050I is an "other law" that would justify disclosure of confidential information by an attorney. Plaintiffs have presented substantial evidence, however, that a reasonably prudent attorney in 1995 would not have disclosed his client's name if he believed it was privileged despite Rule 1.05's authorization to do otherwise. (Goldstein Aff., Docket Entry No. 24, Exhibit 5 ¶¶ 4–7, 12 (citing many authorities for his opinion)) Therefore, even if an attorney might be permitted to disclose his client's name, a question of fact remains whether an attorney in 1995 would nevertheless reasonably believe he was ethically prohibited from disclosing the name.

Plaintiffs argue that because the United States abated the penalties with respect to certain of the 1995 Form 8300s, there can be no genuine issue of material fact as to Plaintiffs' reasonable cause with respect to the remainder of the forms. The court is not persuaded by this argument. The fact that the United States agreed with Plaintiffs' privilege claims as to some of the forms may be probative of whether Plaintiffs acted with reasonable care in omitting information from other forms under similar factual circumstances. But it does not follow that no fact issue remains as to the forms with respect to which the penalties were not abated. The circumstances justifying the assessment of a penalty with respect to the omission of information from one form are independent from those with respect to all other forms.

### 6. *Summary*

Plaintiffs have failed to present sufficient evidence to demonstrate that the names omitted from the 1995 Form 8300s were actually privileged. To the extent those names were not privileged, the court has concluded as a matter of law that Plaintiffs intentionally disregarded their filing obligations by failing to include them in the 1995 Form 8300s. However, genuine issues of material fact exist as to whether Plaintiffs had reasonable cause for omitting the names.

### D. Plaintiffs' Equitable Arguments

#### 1. *Evidence of Vindictiveness and Retaliation*

As one of their grounds for summary judgment, Plaintiffs argue that the IRS assessed the penalties "out of vindictiveness and retaliation rather than the facts in light of the law." (Plaintiffs' Motion, Docket Entry No. 24 at p. 22) Plaintiffs then explain that this court "has inherent powers of equity which, when coupled with notions of due process and fair play, should not play host to the Defendant–IRS's claims." *Id.* Plaintiffs give many details and provide substantial factual support for their claim of retaliation, *id.* at pp. 25–26, 53–54, but do not cite any authority or make any legal argument to show that vindictiveness or retaliation alone entitle them to summary judgment. The closest Plaintiffs come to doing so is to say that "[t]he Defendant–IRS ought not be allowed to single us out for this Godforsaken, costly, administrative merry-go-round because we somehow displeased it along the way." *Id.* at p. 52. The facts Plaintiffs allege might very well support an equitable ground for relief, but it is not the court's function to supply Plaintiffs with their arguments.

### 2. *Equitable Estoppel*

The facts upon which Plaintiffs base their equitable estoppel argument tend to show that the government knew of Plaintiffs' position with respect to the § 6050I reporting requirements, made a couple of half-hearted attempts to enforce those requirements, and then did nothing for several years. (Plaintiffs' Motion, Docket Entry No. 24 at pp. 56–58) Plaintiffs complain that they were lulled into a belief that omitting their clients' identities from the Form 8300s was proper because the government made some efforts to enforce the reporting requirements and then deliberately chose to do nothing except to send computerized notices to Plaintiffs of their failure to report.

■ Equitable estoppel applies to the federal government only in the narrowest of circumstances. *Linkous v. United States,* 142 F.3d 271, 277 (5th Cir.1998). To establish equitable estoppel against the government, not only must the Plaintiffs show the four traditional elements of equitable estoppel,[9] but they must also demonstrate affirmative misconduct on the part of the government. *Id.* "Affirmative misconduct" requires an affirmative misrepresentation or affirmative concealment of a material fact by the government. *Moosa v. INS,* 171 F.3d 994, 1004 (5th Cir.1999). Affirmative misconduct should not be confused with affirmative action; the government's conduct must be wrongful for it to be categorized as misconduct. *Carrillo v. United States,* 5 F.3d 1302, 1306 (9th Cir. 1993) (cited with approval by the Fifth Circuit in *Linkous,* 142 F.3d at 278 n. 3).

■ Although Plaintiffs have cited a number of circumstances that might be misleading, and although Plaintiffs have arguably made out a case for each of the traditional elements of equitable estoppel, Plaintiffs have failed to identify any affirmative misconduct on the part of the United States. The fact that the government might have made an attempt to enforce the § 6050I requirements and then backed off is not a wrongful act of misconduct. Neither was it an act of affirmative misconduct for the government to decide to stop enforcement actions in the Fifth Circuit in favor of enforcing the § 6050I requirements in the Second Circuit. Again, these actions might have been misleading, but they were not "affirmative misconduct." Absent evidence of misconduct, Plaintiffs' are not entitled to summary judgment on this ground.

### 3. *Judicial Estoppel*

Plaintiffs point out that during the administrative proceedings before the various authorities within the IRS, the government contended that penalties were appropriate with respect to all of the Form 8300s from which information was omitted in 1995. Plaintiffs also point out that on January 26, 2001, in a letter from M. Katherine Bellis, the government decided to abate the penalties with respect to some of the Form 8300s. (Docket Entry No. 24, Exhibit 31) Plaintiffs argue that the United States should be judicially estopped from taking these inconsistent positions. The court is not persuaded by this argument.

■ "Judicial estoppel is 'a common law doctrine by which a party who has assumed one position in his pleadings may be estopped from assuming an inconsistent position.'" *In re Coastal Plains, Inc.,* 179

---

**9.** The four traditional elements of equitable estoppel are that the party to be estopped (1) was aware of the facts, and (2) intended his act or omission to be acted upon; and that the party asserting estoppel (3) did not have knowledge of the facts, and (4) reasonably relied on the conduct of the other to his substantial injury. *Linkous,* 142 F.3d at 278.

F.3d 197, 205 (5th Cir.1999) (citing *Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir.1988)). "The doctrine is generally applied where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Id.* at 206 (citing *Scarano v. Central R. Co.*, 203 F.2d 510, 513 (3d Cir.1953)). The Supreme Court has identified the following three factors that courts often analyze in applying the doctrine: (1) a party's later position must be clearly inconsistent with its earlier position; (2) whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *New Hampshire v. Maine*, 532 U.S. 742, 121 S.Ct. 1808, 1815, 149 L.Ed.2d 968 (2001).

■■■ Plaintiffs have failed to support their claim of judicial estoppel. First, it does not appear that the IRS has yet persuaded any court that any of the penalties were proper. Plaintiffs argue that the IRS should be estopped from taking a different position in this litigation than it did during its own internal administrative proceedings. But for the IRS to convince itself, internally, of a particular position is not the same as convincing a court or other tribunal of that position.

More importantly, there is no indication at all that Plaintiffs have been prejudiced by the IRS's change in position. It is somewhat curious that Plaintiffs would complain that some of the penalties against them have been abated. Moreover, because, as discussed earlier, the fact of abatement may lend some credence to the

Plaintiffs' reasonable cause arguments, Plaintiffs' case has been helped, not hurt, by the IRS's change in position.

Plaintiffs argue that they have been prejudiced because the government has been able, by virtue of its inconsistent positions, to manipulate the presumption of correctness and burdens of proof in this case. This argument makes no sense. Had the United States maintained its stance with respect to all of the penalties, the burden of proof would still remain on Plaintiffs. The burden of proof has not been manipulated by the United States' change of position with respect to the abated penalties. Judicial estoppel does not apply.

### 4. *Laches*

Plaintiffs argue that the doctrine of laches should prevent the United States from recovering the amounts assessed as penalties in this case. The court will not reach the merits of this argument because "laches 'may not be asserted against the United States when it is acting in its sovereign capacity to enforce a public right or protect the public interest.'" *In re Fein*, 22 F.3d 631, 634 (5th Cir.1994) (citing *United States v. Popovich*, 820 F.2d 134 (5th Cir. 1987)). Because the United States has assessed penalties for failure to comply with the requirements of an act of Congress, and is thus acting to protect the public interest laches does not apply.

### III. *Conclusion and Order*

Because Plaintiffs have failed to present sufficient evidence to demonstrate that they were under no obligation to report the names omitted from the 1995 Form 8300s, because genuine issues of material fact prevent the court from determining as a matter of law whether Plaintiffs had reasonable cause for omitting those names, and because Plaintiffs' equitable grounds for summary judgment have no merit,

Plaintiffs' Motion for Summary Judgment (Docket Entry No. 24) is **DENIED,** and the United States' Motion for Summary Judgment (Docket Entry No. 19) is **DENIED.**

The Joint Pretrial Order will be filed by September 6, 2002. Docket call will be on September 13, 2002, at 4:00 p.m. in Court Room 9–B, 9th Floor, United States Courthouse, 515 Rusk Avenue, Houston, Texas.